[ORAL ARGUMENT NOT YET SCHEDULED]

**No. 26-5257**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———————

NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF
COLORED PEOPLE,

Plaintiff-Appellee,

v.

UNITED STATES POSTAL SERVICE, *et al.*,

Defendants-Appellants.

———————

On Appeal from the United States District Court
for the District of Columbia (No. 1:20-cv-02295)

———————

**EMERGENCY MOTION FOR STAY PENDING APPEAL**

———————

BRETT A. SHUMATE
  *Assistant Attorney General*

ERIC D. McARTHUR
  *Deputy Assistant Attorney General*

BRAD HINSHELWOOD
LAURA E. MYRON
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7228*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-1754*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

### A.    Parties and Amici

Plaintiff below, and Appellee here, is the National Association for the Advancement of Colored People.  Defendants below, and Appellants here, are the United States Postal Service and David Steiner, in his official capacity as Postmaster General of the United States. Steiner was automatically substituted for Louis DeJoy under Fed. R. App. P. 43(c)(2).  Amici appearing before the district court are Richard Blumenthal, Cory A. Booker, Sherrod Brown, Tom Carper, Mazie K. Hirono, Amy Klobuchar, Edward J. Markey, Jeffrey A. Merkley, Jack Reed, Bernard Sanders, Jeanne Shaheen, Elizabeth Warren, Sheldon Whitehouse, Ron Wyden, and the United States House of Representatives.

### B.    Ruling Under Review

The ruling under review in this case is the July 1, 2026 opinion and order of United States District Court Judge Emmet G. Sullivan granting plaintiff's motion to enforce compliance with the prior settlement agreement, declaring that the standards and procedures set forth in the Postal Service's June 2, 2026 Notice of Proposed

Rulemaking "would violate the Settlement Agreement, and enjoining the Postal Service from implementing the standards and procedures. *See NAACP v. U.S. Postal Service*, No. 20-cv-02295 (D.D.C.). The opinion and order are appended to this motion.

### C.     Related Cases

This case was previously before this Court as appeal numbered 20-5375.  There are three related—and consolidated—cases pending before the U.S. District Court for the District of Columbia: *NAACP v. Trump*, No. 26-cv-1151-CJN (D.D.C.); *League of United Latin American Citizens v. Executive Office of the President*, No. 26-cv-01132-CJN (D.D.C.); and *DSCC v. Trump*, No. 26-cv-01114-CJN (D.D.C.). An interlocutory order of the district court declining to grant a preliminary injunction has been appealed by the plaintiffs in *DSCC v. Trump* and is pending before this Court as No. 26-5193. There is also a pending appeal in the Court of Appeals for the First Circuit in a related challenge to the implementation of Executive Order 14,399. *See California, et al. v. Trump, et al.*, Nos. 26-1774, 26-1779 (1st Cir.).

/s/ *Laura E. Myron*
Laura E. Myron

ii

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

BACKGROUND....................................................................................................4

ARGUMENT......................................................................................................12

    I.     The Postal Service is Likely to Succeed on the Merits.........13

    II.    The Remaining Factors Favor a Stay.. .................................24

CONCLUSION .................................................................................................27

CERTIFICATE OF COMPLIANCE

ADDENDUM

  ATTACHMENT A: District Court Opinion

  ATTACHMENT B: District Court Order

  ATTACHMENT C: Stipulation and Settlement Agreement

# TABLE OF AUTHORITIES

**Cases:**

*Buckhannon Bd. & Care Home, Inc. v. West Va. Dep't of Health & Human Res.*,
  532 U.S. 598 (2001) .............................................................. 14

*Center for Auto Safety v. Nat'l Highway Traffic Safety Admin.*,
  710 F.2d 842 (D.C. Cir. 1983) ............................................... 11

*Cunningham v. United States*,
  748 F.3d 1172 (Fed. Cir. 2014) ........................................... 15

*Defenders of Wildlife v. Perciasepe*,
  714 F.3d 1317 (D.C. Cir. 2013) ........................................... 22

*Department of the Army v. FLRA*,
  56 F.3d 273 (D.C. Cir. 1995) ............................................... 18

*DSCC v. Trump*,
  No. 26-cv-1114, 2026 WL 1487833 (D.D.C. May 28, 2026) .... 10, 22, 26

*Franklin-Mason v. Mabus*,
  742 F.3d 1051 (D.C. Cir. 2014) ..................................... 15, 17

*Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. Department of Homeland Sec.*,
  490 F.3d 940 (Fed. Cir. 2007) ............................................. 15

*Keepseagle v. Vilsack*,
  815 F.3d 28 (D.C. Cir. 2016) ............................................... 18

*Kingdom v. Trump*,
  No. 26-5181, 2026 WL 1905418 (D.C. Cir. June 17, 2026) ............... 25

*Maryland v. King*,
  567 U.S. 1301 (2012) ........................................................ 25

*McLarnon v. United States*,
  154 Fed. Cl. 459 (2021) ..................................................... 15

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007) ........................................................... 23

*In re Murray Energy Corp.*,
  788 F.3d 330 (D.C. Cir. 2015) ......................................... 23

*Nken v. Holder*,
  556 U.S. 418 (2009) ........................................................... 12

*Pigford v. Veneman*,
  292 F.3d 918 (D.C. Cir. 2002) ......................................... 18

*Pigford v. Vilsack*,
  777 F.3d 509 (D.C. Cir. 2015) ......................................... 18

*Richardson v. Morris*,
  409 U.S. 464 (1973) ........................................................... 15

*Seila Law LLC v. CFPB*,
  591 U.S. 197 (2020) ........................................................... 25

*Tritz v. U.S. Postal Serv.*,
  721 F.3d 1133 (9th Cir. 2013) ......................................... 16

*United States v. Cotton*,
  535 U.S. 625 (2002) ........................................................... 18

*United States v. ITT Cont'l Baking Co.*,
  420 U.S. 223 (1975) ........................................................... 15

*Wisconsin Gas Co. v. FERC*,
  758 F.2d 669 (D.C. Cir. 1985) ......................................... 26

**Statutes:**

28 U.S.C. § 1346 ................................................................. 15

39 U.S.C. § 401 ............................................................. 14, 16

39 U.S.C. § 404 ................................................................. 14

39 U.S.C. § 409 ................................................................. 16

**Rules:**

Fed. R. App. P. 8 ........................................................................ 4

**Other:**

91 Fed. Reg. 17,125 (Mar. 31, 2026) ....................................... 7

91 Fed. Reg. 32,915 (June 2, 2026) ..................................... 8, 9

U.S. Const. art. II, § 1, cl. 1 ................................................ 25

U.S. Const. art. II, § 3 ......................................................... 25

## INTRODUCTION

The district court here issued an extraordinary injunction purporting to prohibit the U.S. Postal Service (USPS) from implementing standards the agency articulated in a notice of proposed rulemaking concerning mail-in and absentee ballots before the agency has even finalized a rule. The injunction is all the more remarkable because the sole basis for entering it was to purportedly enforce a private settlement agreement between USPS and plaintiff. Absolutely nothing in the settlement agreement—which merely obligates USPS to post certain guidance documents on its website by October 1 prior to a federal general election—suggests that the proposed rule would breach the Agreement if finalized. *See* Add.29 ¶ 2. And even aside from those flaws, the district court lacks jurisdiction to order specific performance of an obligation that would—on the court's reading—effectively contract away rulemaking authority delegated to the agency by Congress.

There is no serious argument that the Postal Service has failed to comply with the pertinent provision of the settlement agreement. That provision states, in relevant part, that the U.S. Postal Service "will post publicly on its website copies of officially issued National Guidance

Documents related to Election Mail," and for any "federal general election" will do so "no later than October 1 of each election year," while posting "subsequently prepared National Guidance Documents within one week of distribution to the relevant Postal Service employees." Add.29 ¶ 2.  The agreement elsewhere makes clear that the Postal Service "retains discretion over the . . . substantive contents of any such documents posted," *id.*, and that "nothing in this Agreement requires the Postal Service to undertake any specific measure to prioritize monitoring and timely delivery of Election Mail, or any specific measure with respect to the treatment of Election Mail in any given year," Add.31 ¶ 6.

Despite this language—and that October 1 is months away—the district court here interpreted this provision as imposing broad substantive restraints on the Postal Service's rulemaking authority, asserting that the terms of a proposed Postal Service rule would violate the agreement because they would, in the court's view, alter the "practices and policies for prioritizing the monitoring and timely delivery of Election Mail" in ways the court dislikes.  Add.11.  The court

2

thus "enjoined [the Postal Service] from implementing the standards and procedures described in the Proposed Rule."  Add.22-23.

That ruling mangles the text of the settlement agreement beyond recognition.  It also improperly assumes jurisdiction to "enforce" an agreement that the district court read to effectively contract away core rulemaking authority that Congress has bestowed on the Postal Service.  And it rewards gamesmanship by plaintiff and flouts basic principles of justiciability to boot.  Plaintiff brought this motion to "enforce" only after another district court had denied it a preliminary injunction seeking to stop the very same Postal Service rulemaking at issue here, concluding that plaintiff's challenges were premature—a ruling plaintiff has not appealed.

The district court's unwarranted and unprecedented intrusion into the mechanics of agency rulemaking inflicts irreparable injury by undermining the Postal Service's ongoing rulemaking, which the agency is attempting to complete in time for the November 2026 election.  This Court should stay the judgment pending appeal.

The government sought a stay in the district court and requested a ruling by July 8.  *See* Dkt. 184, 184-1, at 2.  The district court has not

3

acted on that motion; instead setting a briefing schedule that would not result in a decision until at least July 15. If the Postal Service is going to finalize and implement any rule in time for the November 2026 election, swift relief is necessary because steps related to the November election could begin as soon as next month. *See* Fed. R. App. P. 8(a)(2). USPS respectfully requests a ruling by July 16 to allow time to seek relief, if necessary, from the Supreme Court.  Plaintiff opposes this motion.

## BACKGROUND

**1.** This case began in August 2020 as a challenge by the plaintiff to several changes the U.S. Postal Service sought to make related to the delivery of mail.  *See* Add.3.  In December 2021, the parties filed a stipulation to settlement and settlement agreement.  *Id.*; *see* Add.25-33.

Paragraph 2 of the Agreement requires the Postal Service to "post publicly on its website copies of officially issued National Guidance Documents related to Election Mail."  Add.29 ¶ 2.  Paragraph 1 of the Agreement defines "National Guidance Documents" as "official materials issued by Postal Service Headquarters that will reflect the Postal Service's formal nationwide Election Mail practices and policies

for prioritizing the monitoring and timely delivery of Election Mail for the national election cycle taking place every two years." Add.28 ¶ 1. "Election Mail" is "any item mailed to or from authorized election officials that enables citizens to participate in the voting process— including ballots, voter registration cards, absentee voting applications, and polling place notifications." *Id.* Paragraph 2 requires the public posting of National Guidance Documents applicable to the "federal general election" no later than "October 1 of each election year." Add.29 ¶ 2. The Agreement also makes explicit that "[t]he Postal Service retains discretion over the specific manner and method of posting, as well as the substantive contents of any such documents posted, as further clarified in Paragraphs 3 and 10 of this agreement," *id.*, and that "nothing in this Agreement requires the Postal Service to undertake any specific measure to prioritize monitoring and timely delivery of Election Mail, or any specific measure with respect to the treatment of Election Mail in any given year," Add.31 ¶ 6.

Paragraph 3 states that in 2026, the "guidance documents will reflect the Postal Service's good faith efforts to prioritize monitoring and timely delivery of Election Mail," though it contains express recognition

5

that "it is premature at this juncture to state with specificity what form those policies will take" and that "there may be different treatment for ballot mail, as compared to other Election Mail." Add.29 ¶ 3.

Paragraph 6 of the Agreement reflects that parties intend to ask the court to retain jurisdiction "over disputes regarding paragraphs 2, 4, and 5," Add.31 ¶ 6(a), but expressly notes that "the court will not retain jurisdiction over other parts of this Agreement," *id.* It also makes clear that "nothing in this Agreement requires the Postal Service to undertake any specific measure to prioritize monitoring and timely delivery of Election Mail, or any specific measure with respect to the treatment of Election Mail in any given year." Add.31 ¶ 6(b). Paragraph 10 sets out procedures for addressing asserted breaches of three provisions of the settlement agreement, including, as relevant here, Paragraph 2. Add.31 ¶ 10. Specifically, the agreement states that plaintiff "may file a motion to enforce or for other relief based on" an alleged violation of Paragraph 2. *Id.*

The stipulation of settlement filed by the parties separately reiterates the request that the court retain "jurisdiction to enforce paragraphs 2, 4, and 5 of the Settlement Agreement," and that

"[n]othing in the parties' Settlement Agreement requires Defendants to undertake any specific measure to prioritize monitoring and timely delivery of election mail, or any specific measure with respect to the treatment of election mail in any given year." Add.25.

**2.** On March 31, 2026, President Trump issued Executive Order 14,399, *Ensuring Citizenship Verification and Integrity in Federal Elections*, 91 Fed. Reg. 17,125 (Mar. 31, 2026) ("Order"). As relevant here, the Order directs the Postal Service "to initiate a proposed rulemaking" with regard to ballot mail for Federal elections to conform to certain design requirements and to develop procedures for individuals to be enrolled with the Postal Service for inclusion on "State-specific Mail-In and Absentee Participation List[s]." Order § 3. The Executive Order directs the Postal Service to begin the proposed rulemaking "within 60 days of" the Order, which was May 30, 2026, with "any final rule" to be issued within 120 days, i.e., by July 29, 2026. *Id.* §§ 3(b), (d). The Executive Order also identifies proposed provisions for inclusion in the notice of proposed rulemaking, *id.* §3(b)(i)-(v), but does not say anything about whether any or all of those provisions

7

should appear in any final rule promulgated after notice and comment, nor whether a final rule must be issued at all, *see id.* § 3(d).

On June 2, 2026, the Postal Service issued a notice of proposed rulemaking. *See Ballot Mail for Federal Elections*, 91 Fed. Reg. 32,915 (June 2, 2026). The proposed rule, if finalized, would "identify new standards" for "envelope design" for Federal Ballot Mail, including "the use of the official Election Mail logo, automation compatibility, placement of a uniquely serialized Intelligent Mail barcode," and "mailpiece design review." *Id.* at 32,915-16. The proposed rule would also establish a process for creating a "Mail-In and Absentee Participation List" whereby states would notify USPS of the individuals to whom it is sending mail-in or absentee ballots for Federal elections, along with address information and barcodes for the outbound and return envelopes, thus helping to facilitate the tracking of ballots and related law-enforcement efforts pursuant to existing Federal law. *Id.* at 32,916. Importantly, "states would retain full control over who would (or would not) be able to vote by mail in federal elections within each state, as states would control enrollment with the Postal Service for inclusion on the state's Mail-In and Absentee Participation List." *Id.* In

8

addition, the proposed rule would establish a verification procedure in which the Postal Service would review the barcodes on the outbound envelopes of ballots presented to USPS for mailing to confirm that the ballots are being sent to individuals who have been enrolled for inclusion on the Mail-In and Absentee Participation List, and would not accept or transmit noncompliant mailings. *Id.* at 32,916, 32,918. USPS would not "verify whether individuals should or should not be included on a State's Mail-In and Absentee Participation List." *Id.* at 32,916.

On April 3, 2026, three days after the issuance of the Order—and well before the Postal Service issued its proposed rulemaking—plaintiff filed suit challenging Executive Order 14,399 in the U.S. District Court for the District of Columbia alongside a number of other organizational plaintiffs against a variety of defendants, including the Postal Service. *See NAACP v. Trump*, No. 26-cv-1151 (D.D.C). In that suit, plaintiff challenges the provision of the Executive Order directing the Postal Service to issue a notice of proposed rulemaking, though plaintiff made no mention of this settlement agreement in the complaint in that suit. *See NAACP v. Trump*, No. 26-cv-1151 (D.D.C. Apr. 3, 2026), Dkt. No. 1,

9

Compl. ¶¶ 17-50.  Nor did plaintiff seek to relate that lawsuit to this one.

On May 28, 2026, another judge of the district court denied a request by plaintiff for a preliminary injunction against implementation of the Order—including the Postal Service's anticipated rulemaking—on the ground that the suit was premature, and thus plaintiff could not show standing, that the suit was ripe, or that it suffered irreparable harm.  *See DSCC v. Trump*, No. 26-cv-1114, 2026 WL 1487833 at \*13 (D.D.C. May 28, 2026) (consolidated with plaintiff's suit).  The district court recognized that because the "Executive Order does not command Plaintiffs to do anything, and . . . no agency has yet acted pursuant to the Order in a way that could harm Plaintiffs, they have not suffered any harm at present, much less harm that is 'certain,' 'great,' and imminent."  *Id.*  That court noted that the Order directs "only that the Postal Service initiate and then complete a rulemaking," and plaintiff's "claims therefore run directly into the bedrock (and commonsense) rule that even 'the issuance of a notice of proposed rulemaking . . . often will not be ripe for review because the rule may or may not be adopted or

10

enforced.'" *Id.* at *10 (quoting *Center for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 710 F.2d 842, 846 (D.C. Cir. 1983)).

**3.** Plaintiff has not appealed that decision. Instead, on June 3, 2026, five days after plaintiff's preliminary injunction request in *NAACP v. Trump* was denied, plaintiff again sought to enjoin the Postal Service's rulemaking through a motion to enforce compliance with the settlement in this case. Judge Sullivan granted the motion on July 1, 2026, concluding that the proposed rule would "violate[] Paragraph 2 of the Agreement" because the Postal Service "cannot post documents reflecting 'practices and policies for prioritizing the monitoring and timely delivery of Election Mail' if its policies provide that it will not accept 'noncompliant mailings' and therefore will not deliver mail-in or absentee ballots to some voters, and if it will not mail ballots to any voters in a state where the state 'declines or fails to certify a list.'" Add.11. The court rejected the government's ripeness arguments because plaintiff "is not seeking judicial review of an agency action under the [Administrative Procedure Act (APA)]; it is seeking to enforce paragraph 2 of the Agreement." Add.13. The court also rejected a claim-splitting argument because the plaintiff "could not seek the relief

11

requested [to enforce the Agreement] in a separate action." Add.19. The district court thus entered a declaration that the proposed Postal Service rule would "violate the Settlement Agreement" and further "enjoined [the Postal Service] from implementing the standards and procedures described in the Proposed Rule." Add.22-23.

## ARGUMENT

A stay pending appeal is warranted. The government is likely to succeed on the merits, will face irreparable injury absent a stay, and the equities support a stay. *See Nken v. Holder*, 556 U.S. 418, 426 (2009).

The settlement provision at issue here provides only that the Postal Service will publicly post certain materials related to election mail on its website by October 1 in advance of a federal general election. The agreement and related stipulation expressly preserve the Postal Service's discretion over the content of those materials. Nothing about that provision permits the district court to predetermine the contents of those materials, much less to intervene in a pending Postal Service rulemaking. The court thus significantly overreached when it relied on the Agreement to consider whether the contents of the Postal Service's proposed rulemaking—if implemented as proposed—would sufficiently

12

prioritize monitoring and timely delivery of Election Mail or not.  This Court should grant a stay pending appeal.

## I.    The Postal Service is Likely to Succeed on the Merits.

Paragraph 2 of the settlement agreement at issue here provides that the Postal Service "will publicly post on its website copies of officially issued National Guidance Documents related to Election Mail."  Add.29 ¶ 2.  The Agreement requires the Postal Service to post such documents for general elections "no later than October 1 of each election year" and makes explicit that the Postal Service "retains discretion over the specific manner and method of posting, as well as the substantive contents of any such documents posted, as further clarified in paragraphs 3 and 10 of this Agreement."  *Id.*  Thus, Paragraph 2 simply states that the Postal Service will make certain practices and policies publicly known by a date certain in advance of a federal general election.  And there can be no serious contention that the Postal Service has failed to do so: October 1 is still months away.

The district court instead read Paragraph 2 as imposing a substantive limitation on the Postal Service's rulemaking authority that it was able to enforce—effectively rendering the Postal Service's

13

exercise of the rulemaking authority delegated to it by Congress subject to the control of a private party and the district court. *See* 39 U.S.C. § 401(2) (granting Postal Service authority to adopt rules and regulations "necessary in the execution of its functions"); *id.* § 404(a)(1) (granting authority "to provide for the collection, handling, transportation, delivery, forwarding, returning, and holding of mail, and for the disposition of undeliverable mail"). That decision was erroneous in numerous respects.

**A.** At the outset, the court lacked authority to grant specific performance of a settlement provision that, on the court's reading, effectively subjected the Postal Service's rulemaking authority to the supervision and control of private parties. Importantly, the agreement between USPS and plaintiff was not embodied in a consent decree, but instead only in a private settlement agreement. Add.28-33; *see also* Order of Dec. 20, 2021; *Buckhannon Bd. & Care Home, Inc. v. West Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001) (explaining that a consent decree reflects "a court-ordered change in the legal relationship between the plaintiff and the defendant" (quotation and alterations omitted)). It is well-established that a settlement

14

agreement with a federal government entity is a contract.  *See*

*Franklin-Mason v. Mabus*, 742 F.3d 1051, 1057-58 (D.C. Cir. 2014);

*Cunningham v. United States*, 748 F.3d 1172, 1176-77 (Fed. Cir. 2014);

*see also United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 236-37

(1975).  And it is equally well-established that as a general matter, no

court has jurisdiction to grant specific performance in a contract suit

against the government.  Thus, in contract suits under the Tucker Act,

it has long been clear that the Court of Federal Claims—which has

exclusive jurisdiction over most contract suits against the government—

lacks authority to order "equitable" remedies, including specific

performance.  *See, e.g.*, *Gonzales & Gonzales Bonds & Ins. Agency, Inc.*

*v. Department of Homeland Sec.*, 490 F.3d 940, 943 (Fed. Cir. 2007);

*McLarnon v. United States*, 154 Fed. Cl. 459, 462 (2021).  The same

principle holds in suits brought in district court under the Little Tucker

Act, 28 U.S.C. § 1346(a)(2), which grants district courts concurrent

jurisdiction over contract actions seeking $10,000 or less in damages.

*See Richardson v. Morris*, 409 U.S. 464, 465-66 (1973) (per curiam)

(explaining that the Little Tucker Act "authoriz[es] only actions for

money judgments and not suits for equitable relief against the United

15

States" and that "the authority thus given to adjudicate claims against the United States does not extend to any suit which could not be maintained in the Court of Claims" (quotation omitted)).

The same essential principle governs here. District courts have original but not exclusive jurisdiction over all actions "brought by or against the Postal Service." 39 U.S.C. § 409(a). Neither § 409(a)—nor any other provision of the statutes governing the Postal Service, including the waiver of sovereign immunity in 39 U.S.C. § 401(1)— expressly departs from the general principles governing relief available in contract actions against the government. Indeed, the jurisdiction conferred by § 409(a) is concurrent with the Court of Federal Claims as to contract actions. *See Tritz v. U.S. Postal Serv.*, 721 F.3d 1133, 1138 (9th Cir. 2013). Given that plaintiffs could have equally sought to enforce the settlement agreement through a suit in the Court of Federal Claims under the Tucker Act, there is no basis to infer that Congress conferred greater authority on district courts to order a remedy otherwise unavailable in federal contracting cases based on a plaintiff's choice of forum. And that conclusion would be especially unwarranted here, as it would imply that the Postal Service could contract away

16

basic regulatory or ratemaking functions or otherwise hamper its operations through settlement agreements enforceable through suits for specific performance by private parties.  Defendants are aware of no precedent supporting that remarkable proposition.

Nor does it matter that the settlement agreement here specified that the district court would retain jurisdiction over alleged violations of Paragraph 2.  This Court has rejected the notion that a settlement agreement can confer jurisdiction a district court otherwise lacks, invoking "the time-honored rule that neither a court nor the parties has the power to alter a federal court's statutory grant of subject matter jurisdiction." *Franklin-Mason*, 742 F.3d at 1055.  That principle governs here: the parties cannot, by consent, confer authority on the district court to grant a remedy Congress itself has not authorized.  The jurisdictional language of the agreement thus rises or falls with the existence of some other source of authorization for the court to adjudicate plaintiff's request for specific performance.  And for the same reason, it does not matter that Defendants did not urge this jurisdictional argument in the district court before it ordered enforcement, as objections to the court's power to entertain a particular

17

claim are not subject to waiver or forfeiture.  *E.g.*, *United States v. Cotton*, 535 U.S. 625, 630 (2002); *Department of the Army v. FLRA*, 56 F.3d 273, 275 (D.C. Cir. 1995).

**B.** Even if a district court *could* entertain claims seeking to leverage a settlement agreement to dictate the terms on which an agency exercises rulemaking authority delegated by Congress, this case would present no occasion to do so.  Where a court has jurisdiction to enforce a contractual arrangement embodied in a judicial consent decree, its power is expressly defined by the terms of the parties' agreement.  *See Pigford v. Vilsack*, 777 F.3d 509, 514 (D.C. Cir. 2015); *Keepseagle v. Vilsack*, 815 F.3d 28, 33 (D.C. Cir. 2016) (holding that district courts are "'constrained by the terms of the decree and related order.'" (quoting *Pigford v. Veneman*, 292 F.3d 918, 924 (D.C. Cir. 2002)).  And here, the text of Paragraph 2 does not remotely contemplate that plaintiff or the district court will be able to dictate the substantive terms of the "officially issued National Guidance Documents related to Election Mail" that the Postal Service will publicly post.  Add.29 ¶ 2.  To the contrary, Paragraph 2 makes express that the Postal Service "retains discretion over the specific manner and

18

method of posting, as well as the substantive contents of any such documents posted, as further clarified in paragraphs 3 and 10 of this Agreement," *id.*, while the parties' stipulation further specifies that "[n]othing in the parties' Settlement Agreement requires [the Postal Service] to undertake any specific measure to prioritize monitoring and timely delivery of election mail, or any specific measure with respect to the treatment of election mail in any given year," Add.25.

The district court sought to draw on definitional language in Paragraph 1 of the agreement to expand the scope of Paragraph 2, but that was misguided in multiple respects. At the outset, even assuming language in Paragraph 1 could be read to suggest substantive constraints on USPS's rulemaking authority, the agreement does not contemplate enforcement of Paragraph 1. Instead, the agreement is explicit that, to the extent it retains jurisdiction, the court may only enforce a limited selection of other paragraphs. *See* Add.25 ("The Court shall have jurisdiction to enforce paragraphs 2, 4, and 5 of the Settlement Agreement…"); Add.31 ¶ 6(a) ("The Stipulation will request that the court retain jurisdiction over disputes regarding paragraphs 2,

19

4, and 5 . . . . The Parties agree that the court will not retain jurisdiction over other parts of this Agreement").

But the district court plainly misread Paragraph 1 in any event. The court relied on the definition of "National Guidance Documents" in Paragraph 1, which explains that such documents are materials "that will reflect the Postal Service's formal nationwide Election Mail practices and policies for prioritizing the monitoring and timely delivery of Election Mail."  Add.10; *see also* Add.28 ¶ 1.  The district court believed that because "National Guidance Documents" are documents addressing "practices and policies for prioritizing the monitoring and timely delivery of Election Mail," the Postal Service "cannot post" such documents in compliance with Paragraph 2 if the Postal Service adopts any policy that could result in the Postal Service not "deliver[ing] mail-in or absentee ballots" to some voter or not "mail[ing] ballots" in certain circumstances.  Add.11.  And the court disregarded the agreement's preservation of the Postal Service's substantive discretion by asserting authority to determine whether "'substantive contents' of the postings" were, in the court's view, "consistent with [the Postal Service's]

20

'practices and policies for prioritizing the monitoring and timely delivery of Election Mail.'" Add.12.

To state that logic is to refute it. Paragraph 1 simply defines the types of documents the Postal Service will publicly post in advance of an election. It says nothing at all about what particular "practices and policies" the Postal Service must develop or implement, or that must be reflected in those documents, much less the circumstances under which the Postal Service must carry or deliver particular mailings. And reading Paragraph 1 in that fashion would effectively nullify the agreement's express preservation of the Postal Service's discretion over the contents of any guidance posted.

**C.** The district court's approach here is all the more remarkable for its disregard for basic principles of justiciability—and the gamesmanship it rewards. Plaintiff here joined other parties in challenging the Executive Order that directed the Postal Service's notice of proposed rulemaking in a separate suit before a different judge of the district court. That judge denied the plaintiffs' request for a preliminary injunction, concluding that the suit was premature, because the plaintiffs could not show that they had standing, that their

21

suit was ripe, or that they suffered irreparable harm. *See DSCC v. Trump*, No. 26-cv-1114, 2026 WL 1487833 at \*13 (D.D.C. May 28, 2026). The district court noted that the Order directs "only that the Postal Service initiate and then complete a rulemaking," and that any injury to plaintiff "depends on a series of contingencies: whether the Postal Service issues a notice of proposed rulemaking, what that proposed rule says, what changes occur through notice and comment, whether a final rule issues, and how that final rule affects voters, States, or Plaintiffs." *Id.* at \*10. "[W]hether framed as an injury, causation, or ripeness problem, 'Article III standing requires more than the possibility of potentially adverse regulation,'" and thus, the court explained, "it is unsurprising that Plaintiffs lack standing to challenge" a provision that does nothing more than "direct the Postal Service to initiate a rulemaking process and consider potential regulatory changes." *Id.* (quoting *Defenders of Wildlife v. Perciasepe*, 714 F.3d 1317, 1324-25 (D.C. Cir. 2013)).

Rather than appeal, plaintiff then filed this motion to "enforce" the settlement agreement. The district court indulged that strategy, concluding that it could pre-determine whether aspects of a *proposed*

22

Postal Service rule would, if finalized, constitute a violation of the settlement agreement. Add.14-15. But the district court here is no better positioned to inject itself into an ongoing rulemaking process than the district court that quite properly denied plaintiff a preliminary injunction in a decision plaintiff has not appealed. Nor can it determine whether such a rule would be lawful if finalized. "[C]ourts have never reviewed *proposed* rules." *In re Murray Energy Corp.*, 788 F.3d 330, 335 (D.C. Cir. 2015) (Kavanaugh, J.). After all, "a proposed rule is just a proposal." *Id.* at 334. And the district court's suggestion that it was free to disregard the principles of Article III standing and ripeness that ordinarily preclude suits challenging *proposed* agency action because it was asked to declare the meaning of the settlement agreement based on hypothetical future agency action, Add.13, ignores that declaratory relief is equally subject to basic Article III principles, *see MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126-27 (2007) (explaining that federal Declaratory Judgment Act reaches only "the type of 'Cases' and 'Controversies' that are justiciable under Article III"). Adjudicating the validity of a proposed rule is no more appropriate in this posture than in a case—like the other plaintiff is participating in—that seeks to have

23

a proposed rule invalidated based on other asserted constitutional or statutory flaws with the proposal.

Indeed, the district court's ripeness rationale here only underscores just how untethered its judgment is from the actual terms of Paragraph 2. The court invoked guidance materials the Postal Service issued in February, as well as purported "confusion and apprehension" resulting from the proposed rule. Add.14-15. Neither of those has anything to do with whether the Postal Service has fulfilled an obligation to "post publicly on its website copies of officially issued National Guidance Documents related to Election Mail" "no later than October 1 of each election year" for a federal general election. Add.29 ¶ 2.

## II. The Remaining Factors Favor a Stay.

The federal defendants will be irreparably harmed absent a stay. Pursuant to the directive in Executive Order 14,399 that the Postal Service initiate a rulemaking, the Postal Service is currently engaged in that rulemaking, and is attempting to issue and implement a final rule in advance of the November 2026 general election. Absent a stay, the injunction issued here will render the agency unable to do so in time to

24

be applicable for the election.  The injunction also irreparably and impermissibly inhibits the President's ability to oversee the Executive Branch.  The order interferes with the President's ability to direct the Postal Service to engage in policymaking, causing irreparable harm, given the Framers' decision to vest all of "[t]he executive Power" in the President and entrust him with the sole constitutional responsibility to "take Care that the Laws be faithfully executed."  U.S. Const. art. II, § 1, cl. 1; *id.* § 3; *Seila Law LLC v. CFPB*, 591 U.S. 197, 203 (2020); *cf. Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) ("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." (citation omitted)); *Kingdom v. Trump*, No. 26-5181, 2026 WL 1905418, at *2 (D.C. Cir. June 17, 2026) (per curiam) (explaining the United States is always "'irreparably harmed' by an improper intrusion by a federal court into the workings of a coordinate branch of the Government'" (citations omitted)).

Moreover, the equities and the public interest favor a stay.  As discussed, plaintiff can claim no actual injury from any actual violation of the plain text of Paragraph 2.  There is no indication now that the

Postal Service has failed, or will fail, to post the specified documents for the public by October 1.  But even if that were not so, as another district court recognized, any challenge to the Postal Service's notice-and-comment rulemaking, which has not been completed, is purely speculative and unripe.  *See DSCC*, 2026 WL 1487833, at *13 (explaining the Postal Service has not "yet acted pursuant to the Order in a way that could harm Plaintiffs, they have not suffered any harm at present, much less harm that is 'certain,' 'great,' and 'imminent.'" (quoting *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)).

Plaintiff's speculation that it may eventually be injured by a future final rule can hardly weigh in the balance here, particularly where plaintiff has neither appealed the other ruling nor sought to renew its request for a preliminary injunction in that case, as the district court invited it to do if a concrete injury materialized.  *DSCC*, 2026 WL 1487833, at *1.

26

## CONCLUSION

This Court should stay the judgment pending appeal.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*

BRAD HINSHELWOOD

*/s/ Laura E. Myron*

LAURA E. MYRON
  *Attorneys, Appellate Staff*
  *Civil Division*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-1754*

# CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 5,109 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in 14-point Century Schoolbook, a proportionally spaced typeface.

*/s/ Laura E. Myron*
LAURA E. MYRON

# ADDENDUM

ATTACHMENT A: District Court Opinion

ATTACHMENT B: District Court Order

ATTACHMENT C: Stipulation and Settlement Agreement

**ATTACHMENT A**

Opinion, *NAACP v. USPS*, No. 20-cv-02295 (D.D.C.) Dkt. 182

Add.1

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

<table>
<tr><td>

NATIONAL ASSOCIATION FOR THE
ADVANCEMENT OF COLORED PEOPLE,

          Plaintiff,

v.


UNITED STATES POSTAL SERVICE,
*et al.*,

          Defendants.

</td><td>

No. 20-cv-2295(EGS)

</td></tr>
</table>

**MEMORANDUM OPINION**

Pending before the Court is Plaintiff the National Association for the Advancement of Colored People's ("NAACP") Motion to Enforce Compliance with the Settlement Agreement and Court Order ("Mot."), ECF No. 171.[1] Upon careful consideration of NAACP's motion, the opposition, the reply, the applicable law, and for the reasons discussed below, the Court **GRANTS** NAACP's motion.

## I.  Background

### A. Settlement Agreement

NAACP filed this lawsuit on August 20, 2020 against Defendants the United States Postal Service and the then-

---

[1] When citing electronic filings throughout this Opinion, the Court cites to the ECF header page number, not the page number of the filed document.

1

Add.2

Postmaster General of the United States[2] in his official capacity (collectively "USPS" or "Postal Service") challenging various changes the Postal Service made with respect to the delivery of Election Mail shortly before the 2020 national election and in the midst of the COVID-19 pandemic. Because the changes the Postal Service implemented lead to significant and nationwide mail delays, NAACP sued "to require the Postal Service to suspend these changes, to restore prompt and reliable mail delivery, and to ensure that mail-in ballots are accorded priority status, as they have been in past years." Compl., ECF No. 1 ¶ 5. On October 10, 2020, the Court granted NAACP's Motion for Preliminary Injunction, ruling that NAACP was likely to succeed on the merits of its claim that the Postal Service made the changes without following the procedures required by law. *See* Mem. Op., ECF No. 32 at 29-34.

In December 2021, the parties entered into a Settlement Agreement ("Agreement") regarding the Postal Service's practices for Election Mail, including those regarding mail-in ballots. *See* Stipulation of Settlement & Proposed Order ("Stipulation"), ECF No 170. The Court "retained jurisdiction to enforce paragraphs 2, 4, and 5 of the Settlement Agreement, subject to

---

[2] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the current Postmaster General David Steiner is substituted as Defendant for the former Postmaster General Louis DeJoy. *See* Fed. R. Civ. P. 25(d).

Add.3

the relevant limitations set out in paragraphs 4.b, 5.b, 6.b, and 10." *See id*. ¶ 2; Minute Order (Dec. 20, 2021).

The parties stipulated that the Postal Service agreed "to prioritize monitoring and timely delivery of election mail." Stipulation, ECF No. 170 at 1. The Agreement requires the Postal Service to issue "National Guidance documents" for every national election cycle through 2028 that "reflect the Postal Service's formal nationwide Election Mail practices and policies for prioritizing the monitoring and timely delivery of Election Mail." Agreement, ECF No. 170 ¶¶ 1-2. Also under the Agreement, the Postal Service "retains discretion over the . . . substantive contents of" the National Guidance Documents, *id*. ¶ 2; but those documents "will reflect the Postal Service's good faith efforts to prioritize monitoring and timely delivery of Election Mail" consistent applicable statutory requirements, regulations, and Postal Regulatory Commission orders, *id.* ¶ 3(b).

## B. Executive Order 14399 and the Postal Service's Proposed Rule

On March 31, 2026, President Trump issued an Executive Order ("EO") designed to exert federal control over who in the United States may be sent a mail-in or absentee ballot in federal elections by the Postal Service. *See* Exec. Order No. 14399, *Ensuring Citizenship Verification and Integrity in Federal Elections*, 91 Fed. Reg. 17125 (Mar. 31, 2026). Among

3

Add.4

other things, the EO directed the Postal Service to initiate a rulemaking on mail-in and absentee ballots and directed that the proposed rulemaking include certain provisions set forth in the EO. *Id.* at 17126.[3] The EO directed that any final rule be issued no later than 120 days from the date of the order or August 3, 2026. *Id.* at 17127.

Pursuant to the EO, the Postal Service issued a Proposed Rule on June 2, 2026 that tracks the directives of the EO. *See* Ballot Mail for Federal Elections, 91 Fed. Reg. 32915 (proposed June 2, 2026) (to be codified at 39 C.F.R. pt. 111) ("Proposed Rule"). Among the changes proposed are new envelope design and review standards—specifically "the use of the official Election Mail logo, automation compatibility, placement of a uniquely serialized Intelligent Mail barcode (IMb) on each outbound and return ballot envelope, and a mailpiece design review." *Id.* at 32916. States would be required to "notify the Postal Service of the individuals to whom they will be mailing a mail-in or absentee ballot, along with the unique barcode applied to the

---

[3] On June 24, 2026, the provision in the EO directing the Postal Service to initiate the rulemaking was declared "legally void" as ultra vires and an unconstitutional violation of the separation of powers, among other things. *See California v. Trump*, No. 1:26-cv-11581-IT, 2026 WL 1826490, at *16 (D. Mass. June 25, 2026). Accordingly, that Court enjoined the Defendants in the case—other than the President—from implementing the provision as to the November 3, 2026 or any earlier federal election in the Plaintiff states. *See id.*

Add.5

outbound and return ballot mail envelope for [the] individual"
to enable the Postal Service to create a "Mail-In and Absentee
Participation List" for each state—the "State-Specific Mail-In
and Absentee Participation List" or "State-Specific
Participation Lists" which the Postal Service would then
"provide to each state's chef election official." *Id.* States
would be able to "add to or modify the list of enrollees until
the last day that ballots may be mailed out to individuals under
state law." *Id.* The Postal Service would only mail ballots to
individuals who are on the State-Specific Participation Lists.
*Id.* This would be accomplished through a Postal Service
verification procedure: the Postal Service would only accept
ballots for mailing to voters if the Postal Service "confirm[s]
that a state submitted a list consistent with the conditions
laid out in the proposed rule, and that the outbound ballot
mail, and thus the blank ballot that could be returned by mail,
is destined to individuals on the list, by checking the
barcodes." *Id.* Mailings that do not comply with the standards
would be returned to the ballot mailer, who can address the
error and then resubmit. *Id.* at 32918.

Under the Proposed Rule, "states would retain full control
over who would (or would not) be able to vote by mail in federal
elections in each state" and states would provide this
information to the Postal Service "via the Federal Ballot Mail

5

Add.6

Portal." *Id*. at 32916. Users of the portal would be required to "certify to the Postal Service that any mail-in or absentee ballots their state's authorized ballot mailers provide to the Postal Service for mailing meet the standards." *Id*. at 32918. If a state does not make this certification, mailings from that state would not be accepted and will be returned. *Id*. The Proposed Rule does not apply to federal primary elections or voting under the Uniformed and Overseas Citizens Absentee Voting Act. *Id.*

The only way for an individual to be enrolled in the Postal Service's Mail-In and Absentee Participation List is to be included on the list provided to the Postal Service through these processes. *Id.* at 32916–18. The Postal Service would then use the information to verify outbound federal ballot mail—that is, ballots sent from election officials to voters—before accepting them for mailing. *Id.* at 32918. Specifically, the Postal Service would review whether the mailing complies with new envelope standards and whether it matches the state-submitted Mail-In and Absentee Participation List and associated barcodes. *Id.* Noncompliant mailings would not be accepted and transmitted; instead, they would be returned to state or local election officials or vendors for correction before resubmission. *Id.* If a state declines to certify a Mail-In and Absentee Participation List, the Postal Service would not

6

Add.7

transmit any outbound federal ballot mail to that state's voters.

## II. Analysis

### A. The Proposed Rule Would Violate Paragraph 2 of the Settlement Agreement

NAACP argues that the Proposed Rule would violate Paragraph 2 of the Agreement because the Postal Service "would refuse to transmit mail-in ballots in states that did not use specific envelopes with specific codes, and would refuse to deliver ballots for voters not included on a state-specific Mail-In and Absentee Participation List." Mot., ECF No. 171 at 9 (citing Proposed Rule, 91 Fed. Reg. at 32918). Furthermore, the Postal Service would "not deliver[] Election Mail altogether for states that do not use USPS's preferred envelopes and barcodes." *Id.* (citing Proposed Rule, 91 Fed. Reg. at 32918). NAACP argues that "there is a grave risk that USPS will fail to timely deliver Election Mail for voters who, through no fault of their own, may not be on the USPS's new Mail-In and Absentee Participation Lists because their state has not certified its List" *Id.* at 9-10 (citing Proposed Rule, 91 Fed. Reg. at 32918). NAACP also points out that the List will contain inaccuracies, resulting in voters failing to receive Election Mail. *Id.* at 10 (citing Ex. B, Prelim. Inj. Hr'g Tr. at 78:1-2, *DSCC v. Trump*, No. 1:26-cv-

Add.8

1114-CJN (D.D.C. May 14, 2026) (government defendants conceding that no list is "perfect")).

The Postal Service responds that Paragraph 2 is merely "an informational obligation for USPS to publicly post practices and policies" and that the Court's ability to enforce Paragraph 2 is "limited to requiring USPS to continue to post on its website the handbooks, regulations, and/or memoranda pertaining to Election Mail". Opp'n, ECF No. 175 at 12.[4] The Postal Service also argues that the Paragraph 2 provision stating that "[t]he Postal Service retains discretion over the specific manner and method of posting, as well as the substantive contents of any such documents posted, as further clarified in paragraphs 3 and 10 of this Agreement" supports its position. *Id.* Finally, the Postal Service argues that the Paragraph 6(b) provision stating that "[t]he Stipulation will specify that nothing in this Agreement requires the Postal Service to undertake any specific

---

[4] The Court does not address the Postal Service's argument that NAACP is trying to enforce Paragraph 3 of the Agreement, *see* Opp'n, ECF No. 175 at 13-14; since NAACP seeks to enforce Paragraph 2, *see* Reply, ECF No. 177 at 8-9. The Court also does not address the Postal Service's arguments about the benefits of the Proposed Rule's envelopes and barcodes, *see* Opp'n, ECF No. 175 at 15-16; since they are not being challenged in the motion. And the Court agrees with NAACP that the Postal Service's assurance that it will continue to use Extraordinary Measures for "completed ballots," *id.* at 16; does not address the issue since the Proposed Rule would allow the Postal Service to reject non-compliant ballots and so they would not be mailed in the first place.

Add.9

measure to prioritize monitoring and timely delivery of Election Mail, or any specific measure with respect to the treatment of Election Mail" similarly supports its position. *Id.* at 14.

The Postal Service's arguments are without merit. First, Paragraph 2 is not merely "an informational obligation." Rather, Paragraph 2 requires that "the Postal Service will post publicly on its website copies of officially issued National Guidance Documents related to Election Mail." Agreement, ECF No. 170 ¶ 2. The Agreement defines National Guidance Documents as "official materials issued by Postal Service Headquarters that will reflect the Postal Service's formal nationwide Election Mail practices and policies for prioritizing the monitoring and timely delivery of Election Mail for the national election cycle taking place every two years."[5] *Id.* ¶ 1. The Postal Service acknowledges that under the Proposed Rule, if a voter is not enrolled on the "State-Specific Mail-In and Absentee Participation List," the voter will "not receive . . . mail-in or absentee ballots." Opp'n, ECF No. 175 at 21. That is because the Postal Service would refuse to accept "noncompliant mailings"—that is, mailings where the individual does not appear

---

[5] The Agreement defines Election Mail as "any item mailed to or from authorized election officials that enables citizens to participate in the voting process—including ballots, voter registration cards, absentee voting applications, and polling place notifications." Agreement, ECF No. 170 ¶ 1.

Add.10

on the Mail-In and Absentee Participation List. Opp'n, ECF No. 175 at 10. The Proposed Rule provides that where a state declines or fails to certify a list the Postal Service requests, it "will not transmit any outbound federal ballot mail to that state's voters." Proposed Rule, 91 Fed. Reg. at 32918. The Proposed Rule violates paragraph 2 of the Agreement because the Postal Service cannot post documents reflecting "practices and policies for prioritizing the monitoring and timely delivery of Election Mail" if its policies provide that it will not accept "noncompliant mailings" and therefore will not deliver mail-in or absentee ballots to some voters, and if it will not mail ballots to *any* voters in a state where the state "declines or fails to certify a list."

Second, the Paragraph 2 provision stating that "[t]he Postal Service retains discretion over the specific manner and method of posting, as well as the substantive contents of any such documents posted, as further clarified in paragraphs 3 and 10 of this Agreement" does not give the Postal Service discretion to disseminate "substantive contents" that are inconsistent with the Agreement as a whole. "The cases are legion establishing that where a contract affords discretion to the government, 'exercise of that discretion must be fair and reasonable. . . .'" *Hous. Auth. of Slidell v. United States*, 149 Fed. Cl. 614, 637 (Fed. Cl. 2020) (quoting *Everett Plywood Corp.*

10

Add.11

*v. United States,* 512 F.2d 1082, 1090 (Ct. Cl. 1975)). Accordingly, the "substantive contents" of the postings must be consistent with its "practices and policies for prioritizing the monitoring and timely delivery of Election Mail."

Third, the Paragraph 6(b) provision stating that "[t]he Stipulation will specify that nothing in this Agreement requires the Postal Service to undertake any specific measure to prioritize monitoring and timely delivery of Election Mail, or any specific measure with respect to the treatment of Election Mail" does not allow the Postal Service to put in place a policy of refusing to accept and deliver certain ballots.

For all these reasons, the Court concludes that the Proposed Rule would violate Paragraph 2 of the Settlement Agreement.

### B. NAACP's Motion is Ripe

The Postal Service advances several arguments in support of its position that NAACP's challenge to the Proposed Rule is not ripe. For the reasons explained below, the Postal Service's arguments are without merit.

The Postal Service argues that NAACP's challenge to the Proposed Rule is not ripe because the Proposed Rule is without legal effect, citing cases that stand for the undisputed proposition that proposed rules are not final agency action subject to judicial review under the Administrative Procedure

11

Add.12

Act ("APA"). *See* Opp'n, ECF No. 175 at 15-16. But NAACP is not seeking judicial review of agency action under the APA; it is seeking to enforce Paragraph 2 of the Agreement and asks the Court to declare that the standards and procedures set forth in the Postal Service's Proposed Rule would violate the Agreement and to enjoin the Postal Service from implementing those standards and procedures. *See* Proposed Order, ECF No. 171-7 at 1.

The Postal Service argues that the issue before the Court is not ripe because the Court's "intervention at this time would merely result in an advisory opinion as to whether the Proposed Rule is in keeping with the Agreement in violation of Article III's requirement that federal courts resolve only "'cases'" and "'controversies.'" Opp'n, ECF No. 175 at 15 (quoting U.S. Const. art. III, § 2). But the Postal Service has not argued that NAACP lacks standing to bring its motion. *See generally* Opp'n, ECF No. 175.

Prudential ripeness "is best seen in a twofold aspect, requiring [the Court] to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 149 (1967). *But see Susan B. Anthony List v. Dreihaus*, 573 U.S. 149, 167 (2014) (questioning the "continuing vitality of the prudential ripeness doctrine," which appears to be in

12

Add.13

"tension with . . . the principle that a federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging" (citation modified)). The Court concludes that both factors weigh in favor of considering the merits of NAACP's motion.

As to fitness, the motion and opposition present legal questions involving the interpretation of the Agreement and whether the Proposed Rule would violate it. *See, e.g., Sweeney v. USPS*, 159 F.3d 1342, 1343 (Fed. Cir. 1987) ("Interpretation of a settlement agreement is a question of law . . . ."). That the Proposed Rule is not final does not affect the Court's interpretation of the Agreement. Rather, the declaratory relief NAACP seeks from the Court is appropriate in this situation. *See IAP Worldwide Servs., Inc. v. United States*, 160 Fed. Cl. 57, 70 (Fed. Cl. 2022) (noting that "[t]he archetypal situation calling for declaratory relief is a dispute over contract interpretation") (citation omitted)).

As to hardship, NAACP has plausibly suggested—and the Postal Service has not disputed—that the Proposed Rule is already having a "real impact on present day affairs." *Volvo N. Am. Corp. v. Men's Int'l Pro. Tennis Council,* 857 F.2d 55, 64 (2d Cir. 1988) (citation omitted). Among other things, the Postal Service issued its 2026-2027 Official Election Mail Guide in February 2026, *see* Reply, ECF No. 177 at 16; and the changes

Add.14

mandated in the Proposed Rule are "already causing confusion and apprehension," *id*. (citing evidence in *California v. Trump*, No. 1:26-cv-11581-IT (D. Mass. Apr. 23, 2026), Dkt. No. 105 where stakeholders have attested to the harm to their interests being caused by the Proposed Rule).

The Postal Service points to *NAACP v. Trump* to explain that NAACP's "ripeness problem" is based on a series of contingencies: "any final rule that may (or may not) be implemented has yet to be issued (if at all), and the guidance documents that would have to be revised to reflect that rule (if it is issued) need not be promulgated for nearly four months." Opp'n, ECF No. 175 at 15-16 (citing *NAACP v. Trump*, No. 26-CV-01114 (CJN), 2026 WL 1487833 at *10 (D.D.C. May 28, 2026)). But the Postal Service has not explained—nor provided authority for— why the Court cannot declare that the standards and procedures set forth in the Proposed Rule would violate the Agreement and enjoin the Postal Service from implementing the standards and procedures. As explained above, declaratory relief is appropriate in this situation. *See IAP Worldwide Servs., Inc.*, 160 Fed. Cl. at 70.

For all these reasons, NAACP's challenge to the Proposed Rule is ripe.

Add.15

## C. NAACP Satisfied the Meet and Confer Requirement in Paragraph 10 of the Agreement

Paragraph 10 of the Agreement provides that prior to filing a motion for relief of a violation of paragraphs 2, 4, or 5 of the Agreement, NAACP must "specify in writing to the Postal Service the alleged violation" and must give "the Postal Service at least five days' notice to investigate the allegations." Agreement, ECF No. 170 ¶ 10. The Postal Service argues that the Court is without jurisdiction to consider the motion because NAACP did not comply with this requirement when it did not wait at least five days after the Proposed Rule was published in the Federal Register on June 2, 2026 before filing the instant motion. *See* Opp'n, ECF No. 175 at 16-17.

On April 2, 2026, the first business day after the EO was issued and sixty-two days before filing the motion, NAACP wrote to the Postal Service to inform it that the rulemaking directed by the EO would cause it to violate the Agreement. Reply, Exhibit A, ECF No. 177—1 at 7-8. The Postal Service acknowledged receipt on the same day and not having received a response, NAACP sent a follow up on April 8, 2026. *Id*. at 6-7. The Postal Service responded on April 14, 2026, stating that paragraph 10 was not implicated because "[i]t is . . . premature to know what final rule will emerge from the notice-and-comment process, including how any such rule would implicate existing legal

15

Add.16

authorities." *Id.* at 5. NAACP responded on April 16, 2026, stating that "[a]s we understand it, the EO directs USPS to initiate a rulemaking that would violate [its] commitments . . . required under the Settlement Agreement. Under these circumstances, we do not think the concerns set forth in our April 2 email are premature." *Id.* at 4. The Postal Service acknowledged receipt the same day. *Id.* at 3. On June 2, 2026, NAACP informed the Postal Service that it intended to file the instant motion and asked the Postal Service to confirm its opposition, which it did the same day. *Id.* at 2.

The Postal Service asserts that NAACP "cannot bootstrap conferral about one issue (the Executive Order) into an adequate conferral about the issue it actually challenges here, the NPRM." Opp'n, ECF No. 175 at 17. The Postal Service's argument is without merit. Sixty-two days before filing the motion, NAACP wrote to the Postal Service to inform it that the rulemaking directed by the EO would cause the Postal Service to violate the Agreement and the Postal Service declined to substantively engage with NAACP on the issue. The Proposed Rule was issued pursuant to the EO and incorporates the requirements set forth in the EO. *Compare* Proposed Rule, 91 Fed. Reg. 32915 (June 2, 2026) *with* Exec. Order, 91 Fed. Reg. 17125 (Mar. 31, 2026). For all these reasons, NAACP complied with the meet and confer requirement in the Agreement.

16

Add.17

### D. The Postal Service's Claim-Splitting Argument Is Without Merit

Finally, the Postal Service relies on *Zerilli v. Evening News Association* to argue that NAACP "is engaging in impermissible claim splitting" because it should have brought its motion as part of *NAACP v. Trump*, No. 26-1151. Opp'n, ECF 175 at 17-18. In *Zerilli*, the Court of Appeals for the District of Columbia Circuit held that a plaintiff has "no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant." 628 F.2d 217, 222 (D.C. Cir. 1980) (citation omitted). The Postal Service claims that NAACP meets the *Zerilli* criteria for claim splitting because: (1) it is challenging the EO that prompted the Proposed Rule in *NAACP v. Trump* and in the instant motion; (2) both that case and the instant motion challenge Section 3(b) of the EO; (3) both cases are in the same court; and (4) both cases are against the same defendant. Opp'n, ECF No. 175 at 18.

The Postal Service's argument is without merit. "[C]laim-splitting prohibits duplicative litigation filed before judgment." *Steele v. United States*, 144 F.4th 316, 324 (D.C. Cir. 2025). There is nothing duplicative about the instant case and *NAACP v. Trump.* This case was filed on August 20, 2020, alleging claims for (1) Non-statutory review of unlawful agency

Add.18

action for failure to follow the procedures required by 39 U.S.C. § 3661, (2) Non-statutory review of unlawful agency action that is arbitrary, capricious, and not in accordance with 39 U.S.C. § 101(e), (3) Mandamus to enforce 29 U.S.C. § 3991, and (4) Mandamus to enforce 39 U.S.C. § 101(e). *See* Am. Compl., ECF No. 149. It was resolved with the Agreement and closed in 2021. The instant motion seeks relief based on the Proposed Rule issued pursuant to the EO. By contrast, *NAACP v. Trump* was filed nearly six years later on April 3, 2026, alleging claims for (1) Ultra Vires Presidential Action, (2) Violation of Separation of Powers—Unlawful Intrusion on Congressional Authority and Violation of Federalism, (3) Violation of Separation of Powers—Unlawful Intrusion on State Authority, (4) Constitutional Right to Vote, (5) Violation of the Postal Service's Statutory Authority, and (6) Agency Action Contrary to the Privacy Act arising out of the EO. That both involve the EO in some way does not turn the claims into the same "subject matter."

Furthermore, NAACP could not seek the relief requested in the instant motion in a separate action: the enforcement of the terms of the Agreement that resolved *this* case can only be enforced through a motion filed in *this* case. *See Garcia Ramirez v. U.S. Immigr. & Customs Enf't*, 812 F. Supp. 3d 86, 97 (D.D.C. 2025) ("District courts have the authority to enforce the terms of their mandates.") (citation omitted).

18

Add.19

For all these reasons, NAACP is not engaging in impermissible claim splitting.

### III. Conclusion

For the foregoing reasons, the Court **GRANTS** NAACP's Motion to Enforce Compliance with the Settlement Agreement and Court Order, ECF No. 171. An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:     Emmet G. Sullivan**
**           United States District Judge**
**           July 1, 2026**

Add.20

**ATTACHMENT B**

Order, *NAACP v. USPS*, No. 20-cv-02295 (D.D.C.) Dkt. 181

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

```
┌─────────────────────────────────────┐
│                                     │
│  NATIONAL ASSOCIATION FOR THE       │
│  ADVANCEMENT OF COLORED PEOPLE,     │
│                                     │
│           Plaintiff,                │
│                                     │
│  v.                                 │
│                                     │
│                                     │
│  UNITED STATES POSTAL SERVICE,      │
│  et al.,                            │
│                                     │
│           Defendants.               │
│                                     │
└─────────────────────────────────────┘
```

No. 20-cv-2295(EGS)

<u>**ORDER**</u>

For the reasons stated in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that Plaintiff's Motion to Enforce Compliance with Settlement Agreement and Court Order, ECF No. 171, is **GRANTED**; and the Court further

**DECLARES** that the standards and procedures set forth in Defendants' Proposed Rule, 91 Fed. Reg. 32915 (June 2, 2026), would violate the Settlement Agreement between the parties; and it is further

1

Add.22

**ORDERED** that the Postal Service is enjoined from implementing the standards and procedures described in the Proposed Rule.

**SO ORDERED.**

**Signed:**    **Emmet G. Sullivan**
**United States District Judge**
**July 1, 2026**

2

Add.23

**ATTACHMENT C**

Stipulation of Settlement and Proposed Order, *NAACP v. USPS*, No. 20-cv-02295 (D.D.C.) Dkt. 170 & Ex. A

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

NATIONAL ASSOCIATION FOR THE
ADVANCEMENT OF COLORED
PEOPLE,

     Plaintiff,

v.          Civil Action No. 20-cv-2295 (EGS)

UNITED STATES POSTAL SERVICE,
et al.,

     Defendants.

**STIPULATION OF SETTLEMENT
AND PROPOSED ORDER**

Plaintiff National Association for the Advancement of Colored People (NAACP or Plaintiff) and defendants United States Postal Service and Postmaster General Louis DeJoy, in his official capacity (collectively, Defendants) have now resolved this case, subject to an order of the Court. The parties agree and stipulate as follows:

1.  The parties have entered into a Settlement Agreement, a copy of which is attached hereto as Exhibit A.

2.  The Court shall have jurisdiction to enforce paragraphs 2, 4, and 5 of the Settlement Agreement, subject to the relevant limitations set out in paragraphs 4.b, 5.b, 6.b, and 10 of the Settlement Agreement, which are incorporated into this Stipulation and Order as if fully set forth herein.

3.  Nothing in the parties' Settlement Agreement requires Defendants to undertake any specific measure to prioritize monitoring and timely delivery of election mail, or any specific measure with respect to the treatment of election mail in any given year.

1

Add.25

4.      This Stipulation and Order shall constitute dismissal with prejudice of Plaintiff's claims for relief. The dismissal of this action shall be effective upon the Court's signing and entry of this Stipulation and Order on the docket as an order of the Court.

5.      Upon entry of the Court's order on the docket, the preliminary injunction and other pending interlocutory orders entered in this case shall be dissolved.

Dated: December 17, 2021                    Respectfully submitted,

/s/ *Allison M. Zieve*                       BRIAN M. BOYNTON
Allison M. Zieve (DC Bar No. 424786)         Acting Assistant Attorney General
Wendy Liu (DC Bar No. 1600942)
PUBLIC CITIZEN LITIGATION GROUP              ERIC R. WOMACK
1600 20th Street NW                          Assistant Director, Federal Programs Branch
Washington, DC 20009
(202) 588-1000                               /s/ *Joseph E. Borson*
                                             JOSEPH E. BORSON (VA Bar No. 85519)
Samuel Spital (D.D.C. Bar No. SS4839)        KUNTAL CHOLERA
Arielle Humphries (admitted pro hac vice)    JOHN J. ROBINSON
NAACP LEGAL DEFENSE &                         Trial Attorneys
  EDUCATIONAL FUND, INC.                     U.S. Department of Justice
40 Rector Street, 5th Floor                  Civil Division, Federal Programs Branch
New York, NY 10006                           1100 L Street NW
(212) 965-2200                               Washington, D.C. 20005
                                             (202) 514-1944
*Counsel for Plaintiff NAACP*
                                             *Counsel for Defendants*

SO ORDERED.

_____
United States District Judge

2

Add.26

**EXHIBIT A**

## SETTLEMENT AGREEMENT

By and through their respective counsel, plaintiff National Association for the Advancement of Colored People (NAACP or Plaintiff) and defendants United States Postal Service (the Postal Service) and Postmaster General Louis DeJoy, in his official capacity (collectively, Defendants) hereby agree to settle and compromise the civil action captioned *NAACP v. United States Postal Service and Louis DeJoy*, No. 20-2295 (the Action), under the terms and conditions set forth in this Settlement Agreement (the Agreement).

WHEREAS mail-in voting is an increasingly utilized method by which many Americans participate in democracy,

WHEREAS mail-in voting requires that voters who choose to use the mail to vote be able to do so effectively,

WHEREAS the NAACP brought the Action against Defendants because, among other things, it believed that the Postal Service was failing to timely implement measures required to ensure timely and reliable mail delivery,

WHEREAS Defendants deny that they failed to timely implement measures required to ensure timely and reliable mail delivery, and to the contrary assert that they performed their role admirably and consistent with the applicable standards,

WHEREAS the Postal Service anticipates utilizing its long-standing policies and practices reflected in its written guidance concerning the November 2020 election in the next upcoming national election for 2022, and all parties recognize that the details and specific policies are subject to change to meet then current circumstances,

WHEREAS NAACP agrees that these intentions are satisfactory to resolve this Action,

And WHEREAS the Parties mutually believe that an agreed resolution of this Action is desirable,

The Parties hereby agree as follows:

1.  As used herein, the following terms will have the following meanings:

    - Election Mail: any item mailed to or from authorized election officials that enables citizens to participate in the voting process—including ballots, voter registration cards, absentee voting applications, and polling place notifications.

    - National Guidance Documents: National Guidance Documents are official materials issued by Postal Service Headquarters that will reflect the Postal Service's formal nationwide Election Mail practices and policies for prioritizing the monitoring and timely delivery of Election Mail for the national election cycle taking place every two years. Such materials would include handbooks, regulations,

and/or memoranda focused on Election Mail. National Guidance Documents do not include all Postal Service Election Mail-related documents, such as technical guidance regarding individual sort plans or mail flow plans or internal presentations used for training purposes.

- Parties: Plaintiff and all Defendants in this Action.

2. In 2022, 2024, 2026, and 2028, the Postal Service will post publicly on its website copies of officially issued National Guidance Documents related to Election Mail. The Postal Service retains discretion over the specific manner and method of posting, as well as the substantive contents of any such documents posted, as further clarified in paragraphs 3 and 10 of this Agreement. The Postal Service will (1) publicly post National Guidance Documents applicable to federal primary elections no later than February 1 of each election year and will post subsequently prepared National Guidance Documents within one week of distribution to the relevant Postal Service employees; and (2) publicly post National Guidance Documents applicable to the federal general election no later than October 1 of each election year and will post subsequently prepared National Guidance Documents within one week of distribution to the relevant Postal Service employees. This Agreement will not require the Postal Service to re-issue National Guidance Documents that are already in effect; however, if the Postal Service does not issue any new National Guidance Documents for an election cycle because otherwise extant National Guidance Documents are already in effect and posted online, it will note that fact publicly on its website.

3. With respect to the guidance documents posted pursuant to paragraph 2, above:

    a. For 2022, the National Guidance Documents will reflect the Postal Service's good faith efforts to take measures similar in content to, and consistent with, the written guidance and extraordinary measures used in the November 2020 election. The Parties acknowledge, however, that the Postal Service may make adjustments to those policies and that it is premature to state with specificity what, if any, changes may be made to the written guidance documents from the November 2020 election for the next national election cycle. The Parties recognize that intervening circumstances, including, but not limited to, statutory or regulatory changes, may occur that make specific measures identified in the written guidance for November 2020 inappropriate or less relevant or instructive in achieving the purposes of the 2020 guidance documents.

    b. For 2024, 2026, and 2028, the guidance documents will reflect the Postal Service's good faith efforts to prioritize monitoring and timely delivery of Election Mail, provided that such efforts will not be inconsistent with any relevant and then-current statutory requirements and then-current regulations of or orders of the Postal Regulatory Commission. The Parties acknowledge, however, that it is premature at this juncture to state with specificity what form those policies will take. The Parties further acknowledge that there may be different treatment for ballot mail, as compared to other Election Mail.

Add.29

**4.  a**. The Postal Service will host outreach meetings with the NAACP twice during each election cycle for the general election that occurs on the Tuesday after the first Monday of November in 2022, 2024, 2026, and 2028: one meeting no later than April in each of those years and one in August or September in each of those years. The outreach meetings are intended to be cooperative discussions in which the participating parties will have an opportunity to ask and answer questions, and to discuss, among other things:

- Information about Election Mail performance,
- Frequently reported Election Mail issues and how they are addressed,
- Ongoing education efforts and outreach, including best practices and recommendations for use of Election Mail,
- Program Kits,
- Postal Service Election Mail website content,
- Operational efforts (e.g., training, outreach, processes), and
- Planned policies and extraordinary measures.

The Postal Service will consider additional follow-up briefings to discuss concerns expressed by NAACP, including service performance and policy changes, if circumstances warrant and the requests are reasonable.

**b.** With respect to the obligations described in paragraph 4, only the failure to hold the meetings specified in subparagraph 4.a will be enforceable pursuant to Paragraph 10 of this Agreement. All other issues described in this paragraph 4, including the Postal Service's determination not to hold an additional follow-up briefing, any concerns regarding the specific content of any information shared (or not shared) during the course of the outreach meetings, or the procedural aspects of outreach meetings (including duration, attendance, or other matters) will not be a basis for any motion to enforce this Agreement brought pursuant to Paragraph 10. The parties agree to cooperate in good faith to address any such disputes.

**c.** At the beginning of the 2022, 2024, 2026, and 2028 election cycles (*e.g.*, in February or March 2022 for the 2022 election season), the NAACP will provide contact information to the Postal Service Law Department for no more than 3 NAACP representatives (which, at the NAACP's election, may include the NAACP's counsel in this action) during that election season, and the Postal Service will identify for the NAACP the relevant contact in the Postal Service Law Department who will be the primary liaison during that election season.

**5.  a.** The Postal Service will provide to the NAACP weekly First-Class Mail and Marketing Mail service performance scores for the 6 weeks before and 1 week following the national general election occurring on the first Tuesday after the first Monday in November 2022 and 2024. The reports will be the same in kind as those reports currently being provided to Congress and the NAACP at the time this Agreement is executed, and they will provide service performance scores for the preceding week. (For example, reports on October 15, 2021, cover data through the week ending October 8, 2021.)

**b.** Should intervening circumstances arise, including, but not limited to, statutory or regulatory changes that require the Postal Service to publicly report data related to Service

Performance that the Parties mutually agree is substantially similar to the weekly reports, that required public reporting will suffice in lieu of providing reports directly to the NAACP.

6. The parties will file this settlement as an exhibit to a Stipulation of Settlement and Proposed Order.

   a. The Stipulation will request that the court retain jurisdiction over disputes regarding paragraphs 2, 4, and 5, above, and enter a final judgment otherwise dismissing the case with prejudice. The Parties agree that the court will not retain jurisdiction over other parts of this Agreement, and they agree not to bring any motion to enforce any provision other than paragraphs 2, 4, and 5, and that those three paragraphs are subject to the relevant limitations set out in paragraphs 4.b, 5.b, 6.b. and 10 of this Agreement.

   b. The Stipulation will specify that nothing in this Agreement requires the Postal Service to undertake any specific measure to prioritize monitoring and timely delivery of Election Mail, or any specific measure with respect to the treatment of Election Mail in any given year.

   c. If the court enters an order inconsistent with the Stipulation set out in paragraph 6.a or 6.b, this Agreement will be null and void.

7. The NAACP hereby waives any and all claims that have been brought or could be brought regarding actions taken by the Postal Service related to transportation policy or Election Mail through the date of execution of this Agreement. This waiver of rights does not preclude the NAACP from bringing future lawsuits regarding action taken by the Postal Service after the date of the execution of this Agreement, and the Postal Service does not waive any objections to jurisdiction, merits, or otherwise regarding any such lawsuits.

8. The dismissal of this Action with prejudice will dissolve the preliminary injunction and other pending interlocutory orders entered in this case. The NAACP agrees not to bring any motions for contempt, sanctions, or to enforce any court orders with respect to any orders or conduct that occurred before the date of the Agreement.

9. All parties agree to bear their own fees and costs incurred in connection with this Action.

10. If the NAACP believes that the Postal Service has violated the terms of paragraphs 2, 4, or 5 of this Agreement, it may file a motion to enforce or for other relief based on that violation. The Postal Service reserves all rights to oppose such a motion, including by arguing that it has not violated the paragraph of the Agreement at issue. Before filing a motion seeking relief with respect to a violation of the terms of paragraphs 2, 4, or 5 of this Agreement, the NAACP must specify in writing to the Postal Service the alleged violation together with all evidence supporting such alleged violation and will provide the Postal Service at least 5 days' notice to investigate the allegations and, if appropriate, to cure the violation. During this time, the parties will meet and confer in good faith in an attempt to resolve this disagreement.

**11.** This Agreement has been entered into by Plaintiff and Defendants solely for the purposes of compromising disputed claims without protracted legal proceedings and avoiding the expense and risk of such litigation. This Agreement is not intended and will not be deemed an admission by any Party of the merit or lack of merit of an opposing Party's claims or defenses. Without limiting the generality of the foregoing, this Agreement does not constitute, and will not be construed as, an admission of liability or fault on the part of the Defendants or as an admission of any contested fact alleged by Plaintiff in connection with the Civil Action or otherwise. The Parties do not intend for this Agreement to be used as evidence or otherwise in any civil or administrative action or proceeding against Defendants, except for proceedings necessary to implement or enforce the terms hereof.

**12.** This Agreement contains the entire agreement between the Parties hereto and supersedes all previous agreements, whether written or oral, between the Parties relating to the subject matter hereof. No promise or inducement has been made except as set forth herein, and no representation or understanding, whether written or oral, that is not expressly set forth herein will be enforced or otherwise given any force or effect in connection herewith.

**13.** The terms of this Agreement may not be modified or amended, and no provision hereof will be deemed waived, except by a written instrument signed by the party to be charged with the modification, amendment, or waiver, or by such party's counsel.

**14.** The Parties acknowledge that the preparation of this Agreement was collaborative in nature, and so agree that any presumption or rule that an agreement is construed against its drafter will not apply to the interpretation of this Agreement or any term or provision hereof.

**15.** The Parties acknowledge that the Postal Service is required to comply with various statutory requirements, and that nothing in this Agreement will require the Postal Service to take action that violates then-current statutory requirements or then-current requirements of regulations or orders issued by the Postal Regulatory Commission.

**16.** The Parties understand and agree that this Agreement, including all the terms and conditions of the compromise settlement herein, as well as any data or information gathered pursuant to Paragraphs 2, 4, and 5 of this Agreement, may be made public in its entirety.

**17.** This Agreement may be executed in two or more counterparts, each of which will be deemed to be an original and all of which together will be deemed to be one and the same agreement. A facsimile or other duplicate of a signature will have the same effect as a manually executed original.

**18.** Upon execution of this Agreement by all Parties hereto, this Agreement will be binding upon and inure to the benefit of the parties and their respective heirs, personal representatives, administrators, successors, and assigns.

**19.** Each signatory to this Agreement represents and warrants that he or she is fully authorized to enter into this Agreement on behalf of the persons or entities indicated below, and has done so freely and voluntarily, without any degree of duress or compulsion.

**20.** This Agreement is effective when signed by all parties hereto.

For Plaintiff:

_____
Allison M. Zieve (DC Bar No. 424786)
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

Samuel Spital (DDC Bar No. SS4839)
NAACP LEGAL DEFENSE &
  EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, NY 10006
(212) 965-2200

*Counsel for Plaintiff NAACP*

Dated: December 15, 2021

For Defendants:

_____
JOSEPH E. BORSON (VA Bar No. 85519)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
(202) 514-1944

*Counsel for Defendants*

Dated: December 16, 2021

Add.33