**[ORAL ARGUMENT NOT YET SCHEDULED]**

No. 26-5257

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

NATIONAL ASSOCIATION FOR THE
ADVANCEMENT OF COLORED PEOPLE,

Plaintiff-Appellee,

v.

U.S. POSTAL SERVICE, et al.,

Defendants-Appellants.

---

On Appeal from the United States District Court
for the District of Columbia (No. 20-2295)

---

## APPELLEE'S OPPOSITION TO APPELLANTS' MOTION FOR A
## STAY PENDING APPEAL

Sam Spital
John S. Cusick
Brittany Carter
NAACP LEGAL DEFENSE AND
EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, NY 10006
(212) 965-2200
sspital@naacpldf.org

Allison M. Zieve
Wendy Liu
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
azieve@citizen.org

Counsel for Plaintiff-Appellee NAACP

July 14, 2026

# CERTIFICATE OF PARTIES AND DISCLOSURE STATEMENT

Pursuant to D.C. Circuit Rules 27(a)(4) and 28(a)(1)(A), the undersigned counsel certifies as follows:

All parties, intervenors, and amici appearing before the district court and in this Court are listed in the Defendants-Appellees' Certificate in the Emergency Motion for a Stay Pending Appeal.

Pursuant to Federal Rule of Appellate Procedure 26.1, Appellee states that it has no parent, subsidiary, or affiliate that has issued shares or debt securities to the public.

Respectfully submitted,

/s/ Allison M. Zieve
Allison M. Zieve

Counsel for Plaintiff-Appellee

# TABLE OF CONTENTS

CERTIFICATE OF PARTIES AND DISCLOSURE STATEMENT .........i

TABLE OF AUTHORITIES.................................................................iv

INTRODUCTION...............................................................................1

STATEMENT OF THE CASE .............................................................3

    A.   The 2020–2021 Litigation .......................................................3

    B.   The Settlement and Court Order.............................................5

    C.   USPS's Preparations to Alter Procedures for Delivery
        of Ballots ...............................................................................6

    D.   Plaintiff's Motion to Enforce Settlement Agreement and Court
        Order.....................................................................................7

ARGUMENT ......................................................................................9

I.    Defendants are not likely to succeed on the merits. ......................9

    A.   The District Court properly exercised jurisdiction over
        Plaintiff's Motion to Enforce. ................................................9

        1.  Courts have jurisdiction to enforce compliance with
            settlement agreements incorporated as court orders. .........9

        2.  Defendants' jurisdictional arguments lack merit. .............12

    B.   The District Court correctly enforced compliance with the
        parties' Agreement. ..............................................................16

    C.    Defendants' remaining arguments are incorrect. ................19

II.   The remaining stay factors favor Plaintiff. ...............................23

CONCLUSION .................................................................................. 26

CERTIFICATE OF COMPLIANCE ....................................................... 28

CERTIFICATE OF SERVICE ............................................................... 28

# TABLE OF AUTHORITIES*

**Cases**                                                                **Pages**

*Abbott Laboratories v. Gardner,*
    387 U.S. 136 (1967) ....................................................................21

*California v. Trump,* No. 26-cv-11581,
    – F. Supp. 3d –, 2026 WL 1826490 (D. Mass. June 25, 2026).......23

*California v. Trump,*
    No. 26-cv-11581, Dkt. 208 (Mem. & Order)
    (D. Mass. July 7, 2026),
    https://www.courtlistener.com/docket/73141063/208/state-of-
    california-v-trump/ ....................................................................25

*Chaplaincy of Full Gospel Churches v. England,*
    454 F.3d 290 (D.C. Cir. 2006)......................................................23

*DSCC v. Trump,*
    No. 26-cv-01114, 2026 WL 1487833 (D.D.C. May 28, 2026) .........20

*Fort Sill Apache Tribe v. National Indian Gaming Commission,*
    317 F. Supp. 3d 504 (D.D.C. 2018)...............................................20

*Franklin-Mason v. Mabus,*
    742 F.3d 1051 (D.C. Cir. 2014).....................................................14

*Frew v. Hawkins,*
    540 U.S. 431 (2004) ....................................................................10

*Glidden Co. v. Zdanok,*
    370 U.S. 530 (1962) ....................................................................13

*International Ladies' Garment Workers' Union v. Donovan,*
    733 F.2d 920 (D.C. Cir. 1984)................................................. 10, 20

*Jules v. Andre Balazs Properties*,
   146 S. Ct. 1209 (2026) ....................................................................11

* *Keepseagle v. Vilsack*,
   815 F.3d 28 (D.C. Cir. 2016) ..............................................11, 12, 18

* *Kokkonen v. Guardian Life Insurance Co. of America*,
   511 U.S. 375 (1994) .......................................................................11

*Lackey v. Stinnie*,
   604 U.S. 192 (2025) ...................................................................12, 16

*League of Women Voters of United States v. Newby*,
   838 F.3d 1 (D.C. Cir. 2016) ............................................................25

*National Ass'n of Utility Commissioners v. Department of Energy*,
   736 F.3d 517 (D.C. Cir. 2013)........................................................24

*Nken v. Holder*,
   556 U.S. 418 (2009) .................................................................2, 25

*Obama for America v. Husted*,
   697 F.3d 423 (6th Cir. 2012) ........................................................25

*Page v. Pension Benefit Guaranty Corp.*,
   213 F. Supp. 3d 200 (D.D.C. 2016)................................................12

*Perry Capital LLC v. Mnuchin*,
   864 F.3d 591 (D.C. Cir. 2017)........................................................17

*Pigford v. Vilsack*,
   777 F.3d 509 (D.C. Cir. 2015)...................................................11, 18

*Pigford v. Veneman*,
   292 F.3d 918 (D.C. Cir. 2002)........................................................11

*Potter v. District of Columbia*,
   126 F.4th 720 (D.C. Cir. 2025)......................................................10

v

*Richardson v. Morris*,
409 U.S. 464 (1973) ......................................................................14

*Shaffer v. Veneman*,
325 F.3d 370 (D.C. Cir. 2003)......................................................11

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) ......................................................................21

*Tritz v. U.S. Postal Service*,
721 F.3d 1133 (9th Cir. 2013) ......................................................15

*Trump v. Cook*,
609 U.S. __, 2026 WL 1855613 (June 29, 2026) ...........................24

* *Trump v. United States*,
603 U.S. 593 (2024) ......................................................................23

*United States v. Facebook, Inc.*,
136 F.4th 1129 (D.C. Cir. 2025) ...................................................11

*United States v. Western Electric Co.*,
797 F.2d 1082 (D.C. Cir. 1986)......................................................19

* *United States v. Western Electric Co.*,
907 F.2d 160 (D.C. Cir. 1990)......................................................22

*Volvo North America Corp. v. Men's International Professional Tennis Council*,
857 F.2d 55 (2d Cir. 1988).............................................................22

*Youngstown Sheet & Tube Co. v. Sawyer*,
343 U.S. 579 (1952) ......................................................................24

**Statutes**

28 U.S.C. § 1331 ..............................................................................14, 15

28 U.S.C. § 1361 ........................................................................ 14, 15

39 U.S.C. § 101(a) ............................................................................ 24

39 U.S.C. § 101 (e) ........................................................................... 24

39 U.S.C. § 202(a) ............................................................................ 24

39 U.S.C. § 403(c) ........................................................................ 3, 24

39 U.S.C. § 409(a) ...................................................................... 14, 15

39 U.S.C. § 503 ................................................................................. 24

U.S. Const. art. I, § 4, cl. 1 ............................................................. 23

U.S. Const. art. I, § 8, cl. 7 ............................................................. 23

## Other Authorities

Black's Law Dictionary (12th ed. 2024) ........................................... 12

Executive Order 14399,
    91 Fed. Reg. 17125 (Mar. 31, 2026) ....................................... 6, 20

Tierney Sneed, et al., *Postal Service Won't Deliver Mail Ballots
    for States That Don't Hand Over Voter Lists, Under Plan
    for Trump Directive*, CNN (June 10, 2026),
    https://www.cnn.com/2026/06/10/politics/postal-service-deliver-
    mail-in-ballots ............................................................................ 21

USPS, Proposed Rule, Ballot Mail for Federal Elections,
    91 Fed. Reg. 32916 (June 2, 2026) ............................................ 6, 7

USPS, *2026–2027 Official Election Mail*
    (Feb. 2026), https://about.usps.com/kits/kit600/kit600_v04-
    2026_001.htm ......................................................................... 22, 25

## INTRODUCTION

This appeal concerns a district court's authority to enforce its own order. In December 2021, Plaintiff National Association for the Advancement of Colored People (NAACP) and Defendant U.S. Postal Service (USPS) agreed to settle litigation concerning the timely delivery of mail-in ballots. In the Settlement Agreement, USPS committed to issue, for every national election cycle through 2028, National Guidance Documents reflecting "formal nationwide … practices and policies for prioritizing the monitoring and timely delivery of Election Mail," including ballots. The parties filed a joint stipulation asking the District Court to adopt the commitment as a court order, and the Court did so.

Despite this commitment, USPS is now racing to implement a proposed rule under which it would refuse to deliver certain ballots mailed by state election officials to American voters. As the District Court explained, however, the enforceable portion of the Settlement Agreement "does not allow the Postal Service to put in place a policy of refusing to accept and deliver certain ballots." Mem. Op., Add.12.[1]

---

[1] Citations to "Add." refer to the addendum attached to Defendants-Appellants' motion.

Without waiting for the District Court ruling (or even completion of briefing) on their motion for a stay, Defendants have moved this Court for a stay pending appeal. The bulk of their argument, though, advances a jurisdictional theory that ignores Supreme Court and D.C. Circuit precedent that is directly on point. Their merits argument is otherwise cursory, largely faulting the District Court for reading the key paragraph of the Agreement in accordance with the Agreement's express definitions. Their discussion of a different NAACP lawsuit challenging the Executive Order that prompted the proposed rule is a red herring, and their ripeness argument ignores undisputed facts in the record showing the impact their actions are already having. Finally, Defendants' claim of irreparable harm turns on the untenable notion that any ruling that interferes with a president's policy preferences warrants a stay.

While offering strong rhetoric, Defendants make no serious effort to meet their "burden of showing that the circumstances justify" an "intrusion into the ordinary processes of administration and judicial review." *Nken v. Holder*, 556 U.S. 418, 427, 434 (2009) (citations omitted). Accordingly, the motion for a stay should be denied.

## STATEMENT OF THE CASE

### A.  The 2020–2021 Litigation

The Postal Reorganization Act of 1970 requires USPS to "provide prompt, reliable, and efficient services to patrons in all areas and [to] render postal services to all communities," 39 U.S.C. § 101(a), and to give "the highest consideration to the requirement for the most expeditious collection, transportation, and delivery of important letter mail," *id.* § 101(e). The statute also provides that USPS "shall not … make any undue or unreasonable discrimination among users of the mails." *Id.* § 403(c).

In the midst of a pandemic and a presidential election cycle, when prompt mail delivery mattered more than ever, the U.S. Postal Service made significant changes that resulted in unreliable service and widespread delays. *See* Dkt. 32 (Mem. Op.) 4–7. Entire towns in rural areas did not receive their mail on some days, and people in some cities went days or weeks without receiving mail. Dkt. 149 (Amended Complt.) ¶¶84–89. Among other consequences, the delays threatened to prevent eligible Americans from voting by mail. *Id.* ¶89.

3

NAACP filed suit to compel USPS to suspend these changes, to restore prompt and reliable mail delivery, and to ensure that mail-in ballots were accorded priority status, as in past years. On September 1, 2020, the District Court granted NAACP's motion for a preliminary injunction, ruling that it was likely to succeed on the merits of its claim that USPS made changes to policies for transporting mail without following procedures required by law. *See* Dkt. 32. Two weeks later, in light of USPS's admission in a parallel case that it had not taken steps to implement the injunction, NAACP filed an emergency motion to enforce the injunction, Dkt. 35, which was granted. *See* Minute Order (Oct. 27, 2020). To ensure timely processing and delivery of mailed ballots, the District Court held additional hearings and granted several motions for additional relief over the following two weeks.

As a result of the litigation and the Court's orders, USPS delivered the vast majority of mailed ballots in time to be counted. *See* Dkt. 149 (Amended Complt.) ¶¶7–8. But the measures that USPS ultimately took to ensure timely delivery of election mail in October of 2020 applied only to the November 2020 election. For that reason, in March 2021, NAACP amended its complaint to allege substantive and procedural claims

4

concerning USPS's changes to transportation policy and its failure to adopt procedures to ensure prompt and reliable mail-in ballot delivery in future elections. *See id.*

### B.  The Settlement and Court Order

On December 17, 2021, the parties filed a Stipulation of Settlement and Proposed Order, Dkt. 170, attaching their Agreement. The District Court incorporated the stipulation by reference in its final order. Minute Order (Dec. 20, 2021) (hereafter, 2021 Order). The Agreement includes several judicially enforceable provisions. Most relevant, paragraph 2 requires USPS to issue "National Guidance Documents" in every national election cycle through 2028. Agreement, Add.29. The Agreement defines National Guidance Documents as "official materials" that reflect USPS's "formal nationwide Election Mail practices and policies for prioritizing the monitoring and timely delivery of Election Mail for the national election cycle." *Id*. Add.28. Consistent with the parties' Agreement and Stipulation, the District Court retained jurisdiction to enforce paragraph 2. *See* Stipulation, Add.25; 2021 Order.

### C. USPS's Preparations to Alter Procedures for Delivery of Ballots

On March 31, 2026, President Trump issued Executive Order 14399, titled "Ensuring Citizenship Verification and Integrity in Federal Elections." 91 Fed. Reg. 17125. Among other things, the Executive Order directed USPS, within 60 days, to initiate a rulemaking to impose new requirements for delivery of mailed ballots, including provisions specifying that USPS will transmit mail-in ballots only if election officials use a particular envelope design that enables USPS to identify the specific voter to whom each ballot is sent, and provisions specifying that USPS will not deliver mail-in or absentee ballots to any voter who is not included on a state-specific list provided in advance to USPS.

Consistent with the meet-and-confer obligation of paragraph 10 of the Agreement, NAACP promptly reached out to counsel for USPS to raise concerns that the rulemaking directed by Executive Order 14399 would cause USPS to violate the Agreement and to ask USPS to investigate and cure. The parties did not reach a resolution.

On June 2, 2026, USPS published the Proposed Rule, the terms of which track the directives of the Executive Order. *See* 91 Fed. Reg. 32915. Among the changes, USPS would create a state-specific "Mail-in and

6

Absentee Participation List" process through a "Federal Ballot Mail Portal." *Id.* at 32918. States, including authorized election officials and their mail service providers, would be required to give USPS a list of the individuals to whom they are mailing mail-in or absentee ballots, along with a unique barcode applied to each outbound and return ballot-mail envelope for each individual voter. *Id.* at 32916–18. USPS would refuse to deliver ballots that did not comply with new envelope and barcode requirements included in the Proposed Rule and would refuse to deliver ballots that did not appear on the state's Mail-In and Absentee Participation List. *Id.* at 32918. And if a state declined to use the special envelopes or to certify a Mail-In and Absentee Participation List, USPS would not transmit *any* outbound federal ballot mail to *any* voters in that state. *Id.*

### D.  Plaintiff's Motion to Enforce Settlement Agreement and Court Order

Because the procedures and requirements set forth in the Proposed Rule run counter to USPS's judicially enforceable obligations under the parties' Agreement, Plaintiff filed a Motion to Enforce Compliance with Settlement Agreement and Court Order. Dkt. 171. The District Court granted the motion, explaining that USPS's plan violates the Agreement

"because the Postal Service cannot post documents reflecting 'practices and policies for prioritizing the monitoring and timely delivery of Election Mail,'" as required by paragraph 2, "if its policies provide that it will not accept 'noncompliant mailings' and therefore will not deliver mail-in or absentee ballots to some voters, and if it will not mail ballots to *any* voters in a state where the state 'declines or fails to certify a list.'" Mem. Op., Add.11.

Further, the District Court rejected Defendants' argument that the motion to enforce was not ripe, noting that the motion presented purely legal issues that were fit for review and that Defendants had not disputed that the proposal was already having a "real impact on present day affairs." *Id*. Add.14 (citation omitted). Finding that Defendants' claim-splitting argument lacked merit, the Court explained that, although the NAACP is challenging the Executive Order in a case filed in April 2026, *see NAACP v. Trump*, No. 26-1151 (D.D.C.), this case was filed in 2020, alleging claims unrelated to the 2026 Executive Order. *See* Mem. Op., Add.18–19. Moreover, the NAACP "could not seek the relief requested in the instant motion in a separate action: the enforcement of the terms of

8

the Agreement that resolved *this* case can only be enforced through a motion filed in *this* case." *Id.* Add.19.

Defendants appealed and moved for a stay of the District Court's order pending appeal. Before completion of briefing, they moved for a stay in this Court.

## ARGUMENT

## I.    Defendants are not likely to succeed on the merits.

### A.    The District Court properly exercised jurisdiction over Plaintiff's Motion to Enforce.

#### 1.    Courts have jurisdiction to enforce compliance with settlement agreements incorporated as court orders.

On December 17, 2021, the parties jointly filed a Stipulation of Settlement and Proposed Order. *See* Add.25. The Stipulation stated: "The Court shall have jurisdiction to enforce paragraphs 2, 4, and 5 of the Settlement Agreement, subject to the relevant limitations set out in … the Settlement Agreement, which are incorporated into this Stipulation and Order as if fully set forth herein." *Id.* The District Court then entered an Order stating: "The terms presented in the stipulation and order are hereby incorporated by reference into this Court's Order." 2021 Order. Thus, last month, in responding to Plaintiff's Motion to Enforce

Compliance, Defendants expressly acknowledged the District Court's jurisdiction to enforce paragraph 2 of the Agreement. *See* Dkt. 175 at 4, 10.

A court's jurisdiction to enforce the terms of its orders is well established. *See Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (stating that a consent decree based on an agreement between the parties is "enforceable as[] a judicial decree that is subject to the rules generally applicable to other judgments and decrees" (citation omitted)); *Potter v. Dist. of Columbia*, 126 F.4th 720, 723 (D.C. Cir. 2025) (recognizing courts' "inherent power to enforce compliance with their lawful orders" (citation omitted)). As this Court has noted, a district court's exercise of its authority to enforce its judgments "is particularly appropriate in a case ... where an administrative agency plainly neglects the terms of a mandate, and the case then returns to the court—under the same docket number and involving the same parties—on a motion to enforce the original mandate." *Int'l Ladies' Garment Workers' Union v. Donovan*, 733 F.2d 920, 922 (D.C. Cir. 1984) (per curiam).

This principle is no different where the pertinent court order incorporates terms of a settlement agreement. As the Supreme Court has

10

explained, where a breach of a settlement agreement is a violation of a court order because "the terms of the settlement agreement had been made part of the order of dismissal—either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order"— the court has "ancillary jurisdiction to enforce the agreement." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994); *see Jules v. Andre Balazs Props.*, 146 S. Ct. 1209, 1219 (2026) (citing *Kokkonen* for this point); *Pigford v. Vilsack*, 777 F.3d 509, 514 (D.C. Cir. 2015) (same). Therefore, "a party that wants the court to retain jurisdiction over its settlement agreement should request that the district court do so in its order of dismissal." *Shaffer v. Veneman*, 325 F.3d 370, 373–74 (D.C. Cir. 2003). That is precisely what the parties jointly did in this case.

The principle also applies in cases where the government is the non-complying party. *See United States v. Facebook, Inc.*, 136 F.4th 1129, 1132 (D.C. Cir. 2025) (citing *Kokkonen* and applying this principle to a motion to enforce an agreement with a federal agency); *Keepseagle v. Vilsack*, 815 F.3d 28, 34 (D.C. Cir. 2016); *Pigford*, 777 F.3d at 514; *Pigford v. Veneman*, 292 F.3d 918, 924 (D.C. Cir. 2002).

11

## 2. Defendants' jurisdictional arguments lack merit.

Defendants expressly agreed to the District Court's retention of jurisdiction to enforce paragraph 2 of the Settlement Agreement, and they expressly acknowledged the Court's jurisdiction in their opposition to Plaintiff's motion to enforce. Now, though, they assert a blanket rule that a court order, unless denominated a "consent decree," is unenforceable against the government. Defendants' assertion should be rejected.

To start, Defendants' concession that consent decrees are judicially enforceable, *see* Defs. Motion 14, forecloses their jurisdictional argument. A consent decree is a "court decree that all parties agree to." *Black's Law Dictionary*, Consent Decree (12th ed. 2024). Thus, when a settlement agreement is incorporated into a judicial order, the incorporated portions of "[t]he agreement [are] then treated as a consent decree." *Page v. Pension Benefit Guar. Corp.*, 213 F. Supp. 3d 200, 206 (D.D.C. 2016), *aff'd sub nom. Collins v. Pension Benefit Guar. Corp.*, 881 F.3d 69 (D.C. Cir. 2018); *see Lackey v. Stinnie*, 604 U.S. 192, 207 (2025) ("A consent decree reflects the parties' own resolution of the merits, but it is approved and given force of law by the court."); *Keepseagle*, 815 F.3d at 31, 33 (using

12

"consent decree" to refer to a "settlement" over which the court retained jurisdiction). Here, then, there is no distinction between a "consent decree" that Defendants agree would be enforceable and the District Court's order stating that the "terms presented in the stipulation and order are hereby incorporated by reference into this Court's Order." 2021 Order.

Failing to recognize that the 2021 Order is a consent order, Defendants' jurisdictional argument starts with the assertion that "as a general matter, no court has jurisdiction to grant specific performance in a contract suit against the government." Defs. Motion 15. Defendants point out that, when the Tucker Act is the basis for jurisdiction in a contract suit against the federal government, the Court of Federal Claims is generally authorized to award damages but not equitable remedies. *See* Defs. Motion 15 (citing cases). That limitation, however, does not reflect some "essential principle" that courts lack authority to order non-monetary relief against the Government, *id.* at 16; it reflects the unique role of the Court of Federal Claims, which has "been given jurisdiction only to award damages." *Glidden Co. v. Zdanok*, 370 U.S. 530, 557 (1962) (plurality opinion). The limitation applies to district courts only when,

13

under the Tucker Act, they "sit as a court of claims" with respect to contract actions for monetary damages against the government. *Richardson v. Morris*, 409 U.S. 464, 465–66 (1973) (per curiam) (citation omitted). Defendants' Tucker Act theory is thus inapposite here, where the parties agree that jurisdiction is not based on the Tucker Act. *See* Defs. Motion 16; *see also* Dkt. 149 (Amended Complt.) ¶16 (citing 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1361 (jurisdiction to compel a federal officer to perform his duty)).[2]

The one case that Defendants cite outside the Tucker Act context further refutes their argument. Asserting that 39 U.S.C. § 409(a)

---

[2] Contrary to Defendants' assertion, Plaintiff could *not* have moved to enforce the Agreement and 2021 Order "through a suit in the Court of Federal Claims under the Tucker Act." Defs. Motion 16. As Defendants themselves explain, the Court of Federal Claims cannot award equitable relief. *See id.* at 15.

By contrast, in *Franklin-Mason v. Mabus*, 742 F.3d 1051 (D.C. Cir. 2014), cited by Defendants, the plaintiff had determined that specific performance of a settlement agreement with the federal government was "no longer practicable" and was seeking monetary damages for breach of the agreement. *Id.* at 1052. This Court therefore transferred the suit to the Court of Federal Claims, explaining that the plaintiff's claim to damages had "no … independent statutory grant of authority" other than the Tucker Act. *Id.* at 1055. Here, Plaintiff's motion sought to enforce compliance with the terms of the Agreement and Order; it did not seek damages; and as Defendants concede, *see* Defs. Motion 16, there is an independent statutory grant of authority.

14

provided the basis for jurisdiction in this case, Defendants cite *Tritz v. U.S. Postal Service*, 721 F.3d 1133, 1138 (9th Cir. 2013), for the proposition that section 409(a) grants district courts jurisdiction over contract claims against USPS, concurrent with the jurisdiction of the Court of Federal Claims under the Tucker Act. To start, Defendants are wrong that 39 U.S.C. § 409(a) is the sole basis for jurisdiction. *See supra* p.14 & n.2. Moreover, *Tritz* does not support the assertion that a settlement agreement is not enforceable against the government—it shows the opposite. In *Tritz*, although the court ruled in favor of USPS, it addressed, *on the merits*, the plaintiff's claim that USPS had breached non-monetary provisions of a settlement agreement. *See id.* at 1140. Thus, *Tritz* stands for the proposition that a district court exercising jurisdiction under 39 U.S.C. § 409(a) can award specific performance against the government for breaching a settlement agreement. Defendants offer no authority for the proposition that district courts presiding over cases under section 409(a)—or 28 U.S.C. § 1331 or § 1361—lack jurisdiction to enforce their own orders requiring the government to act.

In short, the relevant provisions of the parties' settlement agreement were, at the parties' request, expressly made judicially enforceable and "incorporated by reference" in a court order. *See* 2021 Order. Thus, the relevant provisions were "approved and given force of law by the court" and enforceable by the District Court. *Lackey*, 604 U.S. at 207.

**B.    The District Court correctly enforced compliance with the parties' Agreement.**

NAACP's motion sought to enforce obligations under paragraph 2 of the parties' Agreement. That provision requires USPS, through 2028, to issue "National Guidance Documents," defined as "official materials issued by Postal Service Headquarters that will reflect the Postal Service's formal nationwide Election Mail practices and policies for prioritizing the monitoring and timely delivery of Election Mail." Agreement ¶¶1–2, Add.28–29. "Election Mail" is expressly defined to include "ballots." *Id.* As the District Court recognized, USPS's commitment that its nationwide policies will prioritize the monitoring and timely delivery of ballots is therefore a necessary element of paragraph 2 itself, which "is not merely an 'informational obligation'" for USPS. Mem. Op., Add.10 (quoting Defs. Stay Motion, Dkt. 175 at 12).

16

USPS cannot meet its obligation to issue (by October 1 or any other date) documents reflecting practices for prioritizing the monitoring and timely delivery of ballots if it refuses to deliver ballots of its choosing based on newly invented criteria for Election Mail under the Proposed Rule. *Cf. Perry Cap. LLC v. Mnuchin*, 864 F.3d 591, 632–33 (D.C. Cir. 2017) (explaining that anticipatory breach is "a doctrine of accelerated ripeness" because it "gives the plaintiff the option to have the law treat the promise to breach [or the act rendering performance impossible] as a breach itself" (brackets in original; citation omitted)).

Defendants' reliance on paragraph 2's discretionary language, *see* Defs. Motion 18–19, is likewise unavailing. Paragraph 2 states that USPS "retains discretion over … the substantive contents of any such documents posted, as further clarified in paragraphs 3 and 10 of this Agreement." Agreement ¶2, Add.29. But as the District Court explained, USPS's discretion must be exercised reasonably and consistent with its obligations under the Agreement as a whole. Mem. Op., Add.11–12. While paragraph 2 confers on USPS discretion over the "specific manner and method of posting" and the particular content of guidance documents, it does not confer discretion *not* to prioritize the timely

17

delivery of Election Mail—much less to refuse to deliver it at all. Rather, the "substantive contents of the postings must be consistent with [USPS's] practices and policies for prioritizing the monitoring and timely delivery of Election Mail." *Id.* Add.11 (internal quotation marks omitted). In other words, although USPS retains latitude over the means, that latitude is not a license to "put in place a policy of refusing to accept and deliver certain ballots." *Id.* Add.12.

Neither *Pigford* nor *Keepseagle*, on which Defendants rely, *see* Defs. Motion 18, advances Defendants' argument. Those cases stand for the proposition that a court's enforcement of an agreement must stay within the bounds of that agreement and the related order. The Order on appeal does exactly that: It enforces paragraph 2, as the parties agreed it could. *See* Agreement ¶10, Add.31. As the District Court held:

> The Proposed Rule violates paragraph 2 of the Agreement because the Postal Service cannot post documents reflecting "practices and policies for prioritizing the monitoring and timely delivery of Election Mail," if its policies provide that it will not accept "noncompliant mailings" and therefore will not deliver mail-in or absentee ballots to some voters, and if it will not mail ballots to *any* voters in a state where the state "declines or fails to certify a list."

Mem. Op., Add.11 (first quoting Agreement ¶2, then quoting Proposed Rule).

18

Defendants' suggestion that the District Court, in interpreting paragraph 2, should have ignored the definition of "National Guidance Documents" because that definition appears in paragraph 1, *see* Defs. Motion 19, should be easily rejected. As a threshold matter, not only did Defendants waive the argument by not making it below, but they took the *opposite* position. *See* Dkt. 175 at 8. Furthermore, to read the term in paragraph 2 in light of its paragraph 1 definition is not to "enforce" paragraph 1; it is to interpret paragraph 2. And the best understanding of the parties' intent in using a defined term in paragraph 2, and of the District Court's own understanding when it incorporated paragraph 2 into a court order, is the definition *jointly set forth by the parties. See e.g.*, *United States v. W. Elec. Co.*, 797 F.2d 1082, 1088 (D.C. Cir. 1986).

### C.    Defendants' remaining arguments are incorrect.

**1.** Defendants accuse Plaintiff of "gamesmanship," Defs. Motion 21, because it separately filed a lawsuit challenging the Executive Order directing the USPS to issue the proposed rule and the Department of Homeland Security to create citizenship lists. *See NAACP v. Trump*, No. 26-1151 (D.D.C.). But this case, which was filed in 2020 and settled in 2021, does not challenge the 2026 Executive Order. And NAACP could

seek the relief requested in its June 3 motion—enforcement of the terms of the Agreement and 2021 Order—*only* through a motion filed in *this* case. *See Fort Sill Apache Tribe v. Nat'l Indian Gaming Comm'n*, 317 F. Supp. 3d 504, 513 (D.D.C. 2018) (stating that jurisdiction over a settlement, retained by the district court that approved the settlement, "cannot be stretched" to any other district); *see also Int'l Ladies' Garment Workers' Union*, 733 F.2d at 922.

**2.** Defendants are incorrect that a decision in separate litigation, *DSCC v. Trump*, No. 26-cv-01114, 2026 WL 1487833 (D.D.C. May 28, 2026), *appeal filed*, D.C. Cir. No. 26-5193, suggests that Plaintiff's motion in *this* case was premature. While that May 28 decision preceded USPS's proposed rule, there is now nothing "hypothetical," Defs. Motion 23, about the trajectory of the Proposed Rule: The Executive Order directed USPS to initiate a rulemaking within sixty days and to issue any final rule within 120 days. *See* Exec. Order 14399 § 3(b), (d). USPS published the Proposed Rule, which "tracks the directives of the EO," Mem. Op., Add.5, with a comment period timed to permit finalization by the Executive Order's deadline. And the Administration has stated that it "remains confident that the Executive Order will be implemented by the

20

November election."[3] Consistent with those facts, Defendants represented to the District Court that the injunction is delaying implementation of their proposal. *See* Dkt. 184-1 (Defs. Stay Motion) at 20. That representation makes clear that the proposal is not too contingent to adjudicate. Indeed, Defendants' Emergency Motion for Stay is premised on their desire to promptly implement the proposed procedures. Defs. Motion 24–25.

Plaintiff's motion was also prudentially ripe because it was fit for review and delay would cause hardship. *See Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967); *cf. Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167 (2014) (questioning the "continuing vitality of the prudential ripeness doctrine"). As to fitness, Plaintiff's motion presented a purely legal question about how to interpret the parties' agreement and whether paragraph 2 allows USPS to refuse to deliver mailed ballots. And while Defendants point to limits on reviewability under the Administrative Procedure Act (APA) of proposed rules, Defs. Motion 23, Plaintiff does not

---

[3] Tierney Sneed, et al., *Postal Service Won't Deliver Mail Ballots for States That Don't Hand Over Voter Lists, Under Plan for Trump Directive*, CNN (June 10, 2026), https://www.cnn.com/2026/06/10/politics/postal-service-deliver-mail-in-ballots (quoting a White House spokesperson).

assert an APA claim. *See* Mem. Op., Add.13; *see also United States v. W. Elec. Co.*, 907 F.2d 160, 161 (D.C. Cir. 1990) (affirming the district court's declaratory ruling that a party's proposal would violate a consent decree).

As to hardship, NAACP presented evidence—which USPS "has not disputed—that the Proposed Rule is already having a 'real impact on present day affairs.'" Mem. Op., Add.14 (quoting *Volvo N. Am. Corp. v. Men's Int'l Pro. Tennis Council*, 857 F.2d 55, 64 (2d Cir. 1988)). USPS issued its Official Election Mail Guide in February 2026, and the proposed changes are causing "confusion and apprehension." Mem. Op., Add.14–15 (quoting Dkt. 177 (Pl. Reply) at 16 (citing evidence)). Defendants criticize the District Court for considering, in its hardship analysis, the guidance materials that USPS issued in February. *See* Defs. Motion 24. But USPS itself has stressed that internal trainings and education of election officials based on "consistent, uniform messaging for all states and territories" starting early in the calendar year are important to enable USPS to effectively implement policies that prioritize the monitoring and timely delivery of election mail for the general election. *See* Dkt. 171 (Pl. Motion) at 13–14 (citing USPS, *2026–2027 Official Election Mail Guide Kit 600* (Feb. 2026),

22

https://about.usps.com/kits/kit600.pdf); Dkt. 171-3 (Exhibit) at 2, 4–5, 8–9 (USPS Feb. 2026 presentation).

## II.     The remaining stay factors favor Plaintiff-Appellee.

**A.** Defendants also fail to carry their burden to show irreparable harm that is "both certain and great," *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (citation omitted). Defendants' primary theory of harm is that the District Court's July 1 Order "inhibits the President's ability to oversee the Executive Branch." Defs. Motion 25. The President, though, has no power to regulate federal elections, *see* U.S. Const. art. I, § 4, cl. 1; *Trump v. United States*, 603 U.S. 593, 627 (2024); *California v. Trump*, No. 26-11581, – F. Supp. 3d –, 2026 WL 1826490 at *3 (D. Mass. June 25, 2026). And, contrary to Defendants' assertion, Defs. Motion 25, he has no freestanding authority to "direct the Postal Service to engage in policymaking." The Postal Service is a creature of Article I, not Article II, of the Constitution. *See* U.S. Const. art. I, § 8, cl. 7. And when, in the Postal Reorganization Act of 1970, Congress transformed it into a quasi-governmental corporation, Congress specified that USPS regulations are the province of the Board of Governors and the Postal Regulatory

23

Commission—not the President. *See* 39 U.S.C. §§ 202(a), 503. Defendants' primary theory of harm is thus based on an erroneous claim of sweeping authority over USPS, a claim "out of step with the statute Congress enacted" and its goal of postal operations "protected from political interference." *Trump v. Cook*, 609 U.S. __, 2026 WL 1855613 at *7 (June 29, 2026). More generally, the President has no authority to direct USPS (or *any* agency) to violate federal law. *See Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 589 (1952). Yet the enjoined procedures would violate the Postal Reorganization Act, which does not allow USPS to pick and choose which mailed ballots to deliver. *See* 39 U.S.C. §§ 101(a), (e); *see also id.* § 403(c) (prohibiting USPS from "mak[ing] any undue or unreasonable discrimination among users of the mails").

With less conviction, Defendants very briefly suggest that, absent a stay, USPS will suffer harm from being unable to implement the new procedures (and therefore unable to refuse to deliver some mailed ballots) in time for the 2026 election. *See* Defs. Motion 24. It is not apparent how that consequence constitutes harm to USPS. In any event, the time constraint is wholly attributable to Defendants: The decision to make

24

consequential changes so soon before the election was entirely their own, and, thus, "the government's problem is of its own making." *Nat'l Ass'n of Regul. Util. Comm'rs v. Dep't of Energy*, 736 F.3d 517, 520 (D.C. Cir. 2013). This Court should not now rescue them from the compressed timeline on which they chose to act. *See also California v. Trump*, No. 26-cv-11581, Dkt. 208 (Mem. & Order) at 6 (D. Mass. July 7, 2026) (finding that "Defendants have made no showing that 'delay' of the EO's deadlines for USPS' implementation constitutes irreparable injury").[4]

**B.** Because the federal government is the moving party, the third and fourth stay factors merge, *Nken*, 556 U.S. at 435, and both weigh heavily against a stay. The public interest lies "in ensuring that unlawful agency decisionmaking does not strip citizens of the right to vote," *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 14 (D.C. Cir. 2016), and "favors permitting as many qualified voters to vote as possible," *Obama for Am. v. Husted*, 697 F.3d 423, 437 (6th Cir. 2012). A stay would undermine the public interest by allowing USPS to refuse to deliver mail-in ballots to voters, potentially depriving thousands or millions of voters

---

[4] Available at https://www.courtlistener.com/docket/73141063/208/state-of-california-v-trump/.

25

of the ability to vote by mail, through no fault of their own. State and county officials have catalogued, under oath, the administrative, financial, and technical obstacles to ensuring universal adoption of USPS's preferred ballot design and keeping voter lists current within the Proposed Rule's timeframe. *See* Dkt. 177 (Pl. Reply) at 16.

In addition, uncontested evidence demonstrates the confusion and disruption that the Proposed Rule is already causing among voters, NAACP's members, and election officials nationwide. *See id.* Add.14–15. A stay would further compound those harms at a moment when—as USPS has itself recognized in issuing its election guide five months ago— stability in administration and robust training are crucial. *See* USPS, *2026–2027 Official Election Mail* (Feb. 2026), https://about.usps.com/ kits/kit600/kit600_v04-2026_001.htm.

## CONCLUSION

Defendants' motion for a stay pending appeal should be denied.

Respectfully submitted,

Sam Spital                          Allison M. Zieve
John S. Cusick                      Wendy Liu
Brittany Carter                     PUBLIC CITIZEN LITIGATION
NAACP LEGAL DEFENSE AND             GROUP
EDUCATIONAL FUND, INC.              1600 20th Street NW
40 Rector Street, 5th Floor         Washington, DC 20009
New York, NY 10006                  (202) 588-1000
(212) 965-2200                      azieve@citizen.org
sspital@naacpldf.org

Counsel for Plaintiff-Appellee

July 14, 2026

27

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 5,199 words. This brief also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E), 32(a)(5), and 32(a)(6) because it was prepared using Word for Microsoft 365 in Century Schoolbook 14-point font, a proportionally spaced typeface.

/s/ Allison M. Zieve
Allison M. Zieve

# CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

/s/ *Allison M. Zieve*
Allison M. Zieve