[NOT YET SCHEDULED FOR ORAL ARGUMENT]

No. 25-5257

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———————————

NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF
COLORED PEOPLE,

Plaintiff-Appellee,

v.

UNITED STATES POSTAL SERVICE, *et al.*,

Defendants-Appellants.

———————————

On Appeal from the United States District Court
for the District of Columbia (No. 1:20-cv-02295)

———————————

**REPLY IN SUPPORT OF MOTION FOR A STAY PENDING
APPEAL**

———————————

BRETT A. SHUMATE
  *Assistant Attorney General*

ERIC D. McARTHUR
  *Deputy Assistant Attorney General*

BRAD HINSHELWOOD
LAURA E. MYRON
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7228*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-1754*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

### A.    Parties and Amici

Plaintiff below, and Appellee here, is the National Association for the Advancement of Colored People.  Defendants below, and Appellants here, are the United States Postal Service and David Steiner, in his official capacity as Postmaster General of the United States. Steiner was automatically substituted for Louis DeJoy under Fed. R. App. P. 43(c)(2).  Amici appearing before the district court are Richard Blumenthal, Cory A. Booker, Sherrod Brown, Tom Carper, Mazie K. Hirono, Amy Klobuchar, Edward J. Markey, Jeffrey A. Merkley, Jack Reed, Bernard Sanders, Jeanne Shaheen, Elizabeth Warren, Sheldon Whitehouse, Ron Wyden, and the United States House of Representatives.

### B.    Ruling Under Review

The ruling under review in this case is the July 1, 2026 opinion and order of United States District Court Judge Emmet G. Sullivan granting plaintiff's motion to enforce compliance with the prior settlement agreement, declaring that the standards and procedures set forth in the Postal Service's June 2, 2026 Notice of Proposed

Rulemaking "would violate the Settlement Agreement," and enjoining the Postal Service from implementing the standards and procedures. *See NAACP v. U.S. Postal Service*, No. 20-cv-02295 (D.D.C.). The opinion and order are appended to the government's stay motion.

## C.    Related Cases

This case was previously before this Court as appeal numbered 20-5375.  There are three related—and consolidated—cases pending before the U.S. District Court for the District of Columbia: *NAACP v. Trump*, No. 26-cv-1151-CJN (D.D.C.); *League of United Latin American Citizens v. Executive Office of the President*, No. 26-cv-01132-CJN (D.D.C.); and *DSCC v. Trump*, No. 26-cv-01114-CJN (D.D.C.). An interlocutory order of the district court declining to grant a preliminary injunction has been appealed by the plaintiffs in *DSCC v. Trump* and is pending before this Court as No. 26-5193. There is also a pending appeal in the Court of Appeals for the First Circuit in a related challenge to the implementation of Executive Order 14,399. *See California, et al. v. Trump, et al.*, Nos. 26-1774, 26-1779 (1st Cir.).

/s/ *Laura E. Myron*
Laura E. Myron

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................1

ARGUMENT ........................................................................................2

    A.    The Government Is Likely To Prevail On The Merits ...........2

    B.    The Remaining Factors Favor A Stay....................................11

CONCLUSION ....................................................................................14

CERTIFICATE OF COMPLIANCE

## INTRODUCTION

Plaintiff's response rests on the remarkable proposition that the U.S. Postal Service's (USPS) commitment to "post publicly on its website" certain documents by October 1 before a federal general election grants plaintiff and the district court ongoing supervisory authority over the content of those documents, notwithstanding that the very next sentence expressly reserves to USPS "discretion over . . . the substantive contents of any such documents." Add.29 ¶ 2. And from that premise, plaintiff further asserts that the district court could properly opine on the validity of terms in a USPS notice of proposed rulemaking, notwithstanding that ordinary principles of ripeness would foreclose such review—and indeed, notwithstanding that another district court has already deemed plaintiff's challenge to the proposed rule unripe.

That is mistaken in every respect. The district court lacked jurisdiction to order specific performance of a settlement agreement, and plaintiff's primary response confuses a court-ordered consent judgment with a settlement agreement. Even if that were not so, the plain terms of the settlement agreement cannot be read to contract

away the substantive rulemaking authority Congress has granted to USPS to the control of plaintiff and the district court.  And the district court's overreach irreparably harms the Postal Service, which is trying to conclude any implementation of a final rule in time for the November 2026 election. This Court should grant a stay pending appeal.

## ARGUMENT

### I.    The Government Is Likely To Prevail On The Merits.

A. As explained in our stay motion (14-18), the district court did not have jurisdiction to enter an order enjoining implementation of the proposed USPS rulemaking.  Plaintiff's arguments for jurisdiction proceed from premises already rejected by this Court and misconceive the settlement agreement and resulting judgment of dismissal.

As we explained, no statute confers jurisdiction on the district court or waives the government's sovereign immunity as to claims against the government for specific performance of a contract.  Plaintiff does not suggest a statutory basis for the district court's jurisdiction or a waiver of sovereign immunity; instead, it argues that the district court could rely on its own inherent authority to enforce a prior order. *See* Resp. 10. But plaintiff's opposition elides fundamental distinctions

2

between a settlement and a judgment.  The cases on which plaintiff relies involve circumstances in which a court enters a consent judgment that includes some sort of injunctive or other compulsive relief (commonly termed "consent decrees").   "A consent decree reflects the parties' own resolution of the merits, but it is approved and given force of law by the court."  *See Lackey v. Stinnie*, 604 U.S. 192, 207 (2025) (citing *Firefighters v. Cleveland*, 478 U.S. 501, 523 (1986)); *see, e.g., United States v. American Tel. & Tel. Co.*, 552 F. Supp. 131, 225-34 (D.D.C. 1982) (entering modified consent judgment directing breakup of telecommunications company); *System Fed'n No. 91, Ry. Emp. Dep't v. Wright*, 364 U.S. 642, 644 (1961) (describing terms of consent judgment, including an injunction).  And unlike a dismissal following a private settlement, a consent decree thus "conclusively resolves the claim, bears a judicial *imprimatur*, and may grant enduring relief that materially alters the legal relationship between the parties."  *Lackey*, 604 U.S. at 207; *see Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 378 (1992) (explaining that a consent decree is "enforceable as[] a judicial decree that is subject to the rules generally applicable to other judgments and decrees).  A violation of a consent decree is enforceable by a citation for

3

contempt or by an injunction to comply with the court's prior order. *Firefighters*, 478 U.S. at 523; *see Wright*, 364 U.S. at 647 (referring to consent decree as 'injunctive decree').

No order of that sort was entered here, however. The judgment here dismisses the case without imposing any judicial relief, much less relief enforceable by contempt. Nor could the court impose such obligations simply by referencing or "incorporating" the settlement agreement in its dismissal order. *See* Fed. R. Civ. P. 65(d)(1)(C). And plaintiff notably does not suggest that the settlement agreement itself has the attributes of an injunction or is enforceable by contempt. A court's power to enforce its own orders and judgments thus cannot support jurisdiction here.

As a fallback, plaintiff argues that the district court had "ancillary jurisdiction to enforce the agreement" because "the terms of the settlement agreement had been made part of the order of dismissal." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994); Resp. 11. But plaintiff does not acknowledge or address this Court's explanation that "*Kokkonen* is easily distinguishable because, unlike here, no governmental entity was involved." *Franklin-Mason v. Mabus*,

4

742 F.3d 1051, 1055 (D.C. Cir. 2014). *Franklin-Mason* reached that conclusion even though the district court there had both "incorporate[d] the settlement agreement into the dismissal order" and "specifically include[d] a clause in the dismissal order retaining jurisdiction." *Id.* Instead, *Franklin-Mason* makes clear that a district court cannot alter the jurisdictional regime Congress has established for the enforcement of contracts with the government by invoking "ancillary jurisdiction" over an agreement: "neither a court nor the parties has the power to alter a federal court's statutory grant of subject matter jurisdiction." *Id.*

Thus, plaintiff would need to identify both a waiver of sovereign immunity and a source of jurisdiction to obtain specific performance of a settlement agreement. As noted, however, plaintiff has not even attempted to do so. Nor does plaintiff explain why Congress would authorize that dramatic departure from the background principles precluding specific performance as a remedy in actions against the government, or grapple with the perverse consequences that would have: plaintiff never disputes that on its view, government agencies could contract away rulemaking discretion or other functions to the supervision and veto power of private parties.

5

Finally, *Tritz v. USPS* does not support plaintiff's assertion that a settlement agreement with USPS is enforceable against the government through specific performance. In that case, the plaintiff sought money damages in excess of $10,000 for breach of a settlement agreement, and the Ninth Circuit held that 39 U.S.C. § 409(a) "independently grants district courts jurisdiction, concurrent with the Court of Federal Claims, to hear claims against the Postal Service for more than $10,000." 721 F.3d 1133, 1136, 1138 (9th Cir. 2013). Nothing in that case suggests that a plaintiff may seek injunctive relief that plaintiff concedes would be unavailable under the Court of Federal Claims' "concurrent" jurisdiction. *See* Resp. 14 n.2; *see also Richardson v. Morris*, 409 U.S. 464, 465-66 (1973) (per curiam) (explaining that the Little Tucker Act "authoriz[es] only actions for money judgments and not suits for equitable relief against the United States").

B. Even assuming the Agreement could be judicially enforced, USPS has not violated any enforceable provision. Plaintiff does not dispute that both the Agreement and the Stipulation expressly limit enforcement of the Agreement to Paragraphs 2, 4, and 5. The district court here relied only on Paragraph 2, which states, in relevant part:

6

"In . . . 2026 . . . the Postal Service will post publicly on its website copies of officially issued National Guidance Documents related to Election Mail. The Postal Service retains discretion over the specific manner and method of posting, as well as the substantive contents of any such documents, as further clarified in paragraphs 3 and 10 of this Agreement."  Add.29 ¶ 2.  The paragraph further provides that USPS will "publicly post National Guidance Documents applicable to the federal general election no later than October 1 of each election year." *Id.*  From this informational obligation, the district court and plaintiff inexplicably derive an enforceable "commitment [by USPS] that its nationwide policies will prioritize the monitoring and timely delivery of ballots."  Resp. 16.  Such a "commitment" appears nowhere in the text of Paragraph 2 of the Agreement.

The plain terms of the paragraph do not provide plaintiff—or the district court—with supervisory or veto power over USPS's practices and policies, including new proposed rules.  Indeed, the Agreement repeatedly reiterates that USPS controls the "substantive contents" of any National Guidance Documents.  *See id.*; *see also id.* ¶ 3(b) (acknowledging that it is "premature" to "state with specificity what

form [USPS's policies for 2026] will take").  Contrary to plaintiff's suggestion, the discretion retained by USPS over the substantive content of its guidance documents is not "confer[red]" by the Agreement, but by the Postal Service's authority granted by Congress.  Resp. 17. The Agreement merely memorializes the basic principle that the agency did not contract away its substantive rulemaking authority when it agreed to make certain guidance documents publicly available at certain times prior to a general election.  USPS can publicly disseminate its policy documents, in keeping with Paragraph 2 of the Agreement, regardless of their substantive content.  Paragraph 2 requires only that the public be informed of USPS's policies, not that plaintiff be satisfied with them.

Moreover, nothing in Paragraph 1's definition of "National Guidance Documents" or Paragraph's 3's statement that for 2026, "the guidance documents will reflect the Postal Service's good faith efforts to prioritize monitoring and timely delivery of Election Mail" creates any substantive limitation of the Postal Service's rulemaking authority, much less one that is enforceable by the district court. That is particularly true for Paragraph 3, given that the settlement itself

8

conspicuously omits Paragraph 3 from the listed paragraphs the district court might enforce.  Thus, any authority the district court could have does not extend to making determinations about whether "the substantive contents of the postings [are] consistent" with the district court's view of the best way for USPS to prioritize the monitoring and timely delivery of Election Mail.  Add.11.

Plaintiff contends that "USPS cannot meet its obligation to disseminate documents reflecting practices for prioritizing the monitoring and timely delivery of ballots if it refuses to deliver ballots of its choosing based on newly invented criteria for Election Mail under the Proposed Rule."  Resp. 17.  That argument conflates the substantive contents of the documents with the obligation to make them publicly available.  And the argument is meritless on its own terms.  The proposed rule, even if implemented as a final rule without modification, does not hamper the prioritization of monitoring and timely delivery of ballots, and in fact would advance that objective in multiple respects. For example, USPS explained that aspects of the proposed rule "are consistent with the Postal Service's existing recommended best practices," 91 Fed. Reg. 32,915, 32,916 (June 2, 2026), such as use of the

9

Election Mail Logo, which "is an important tool for mailpiece visibility," *id.* Similarly, ensuring that ballot mail is automation compatible would allow the efficient processing of ballot mail "without unexpected complications or delays in operations." *Id.* Thus, these reforms, consistent with the Agreement, would likely enhance, not hamper, the prioritized monitoring and timely delivery of ballots. And by the same token, the Agreement does not speak to what particular pieces of mail USPS must accept for delivery, which of course occurs before any "prioritization" or "delivery."

C. If plaintiff is dissatisfied with USPS's ultimate practices (and has Article III standing), its recourse is to file a suit challenging them. Such a challenge is, as a district court in this Circuit already held, not yet ripe. *See DSCC v. Trump*, No. 26-CV-01114 (CJN), 2026 WL 1487833 (D.D.C. May 28, 2026). Plaintiff suggests that ripeness is not a problem here because this is not an Administrative Procedure Act challenge (Resp. 21), nor is it a challenge to the Executive Order (Resp. 19) directing USPS to initiate the proposed rulemaking in question. But plaintiff cites no case concluding that actions based on a settlement agreement are exempt from ordinary principles of ripeness, and does

10

not acknowledge the general principle that even actions for declaratory relief are subject to ordinary Article III principles. *See, e.g.*, *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-40 (1937). This Court should not open the door to such an end-run around basic justiciability principles.

Finally, plaintiff points to "confusion and apprehension" caused by USPS's proposed changes that may, if implemented, conflict with USPS's Official Election Mail Guide issued in February. If anything, that only underscores that this challenge is unripe. After all, a proposed rule "is just a proposal," *In re Murray Energy*, 788 F.3d 330, 334 (D.C. Cir. 2015), and USPS has plenty of time before the October 1 deadline imposed by the Agreement to finalize and publish any National Guidance Documents regarding Election Mail.

## II. The Remaining Factors Favor A Stay

As established in our stay motion (at 24-26), the injunction irreparably and impermissibly inhibits the President's ability to oversee the Executive Branch by improperly barring USPS from implementing his policymaking directives before the November 2026 general election. Indeed, as this Court recently reiterated, the United States is always "irreparably harmed by an improper intrusion by a federal court into

11

the workings of a coordinate branch of the Government." *Kingdom v. Trump*, No. 26-5181, 2026 WL 1905418, at \*2 (D.C. Cir. June 17, 2026) (per curiam) (citations omitted).  Plaintiff improbably suggests in response (Resp. 23) that the Postal Service is not an Executive Branch agency and cannot be directed by the President. *But see* 39 U.S.C. § 201 (creating USPS as "an independent establishment of the executive branch of the Government of the United States").  Nor is there reason to conclude that such harm would not occur because the President cannot direct his subordinates to violate the law.  As another district judge recognized in denying plaintiff's prior preliminary injunction request, the Presidential directive in question "does not itself regulate . . . how mail-in or absentee ballots will be transmitted," and "whether the government's actions under the Order are lawful or unlawful will depend on how" the Postal Service "decide[s] to implement the Order, not on the Order itself."  *See DSCC*, 2026 WL 1487833 at \*11-12.  And the requisite directives within the Executive Order are qualified by (i) the directive that the Postal Service engage in the deliberative process of notice-and-comment rulemaking, and (ii) repeated instructions that the Order's directives should be carried out only to the extent "feasible"

12

and "consistent with applicable law." *See* Executive Order 14,399, 91 Fed. Reg. 17,126 §§ 2(a), 4(c), 3(b)(iv), 7(b) (Mar. 31, 2026).

Finally, plaintiff's argument on irreparable harm underscores its lack of injury. The district court's injunction improperly prejudges the outcome of an ongoing deliberative process. Plaintiff cannot demonstrate that it suffers any particularized injury from ongoing policymaking deliberations. As the response demonstrates, plaintiff's only alleged harms stem from concerns about agency actions that do not exist and might never exist in the form plaintiff hypothesizes. By contrast, in the absence of a stay, USPS will likely not be able to get appellate relief in time to implement any rule for the November 2026 election, even if it ultimately prevails on appeal and the finalized USPS rule is entirely lawful. Even an extremely expedited appeal would not allow sufficient time for implementation of any final rule for the November election, given that any new processes would need to be implemented well before November—indeed, as soon as early August— given the timing of state election procedures concerning voter-roll verification and absentee or mail-in voting.

13

# CONCLUSION

This Court should stay the district court's order pending appeal.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*

BRAD HINSHELWOOD
 */s/ Laura E. Myron*

LAURA E. MYRON
  *Attorneys, Appellate Staff*
  *Civil Division*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-1754*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2,535 words. This document also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in 14-point Century Schoolbook, a proportionally spaced typeface.

*/s/ Laura E. Myron*
Laura E. Myron